**In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

**This Document Relates To: All Cases**

**No. M21–88, MDL NO. 1358(SAS).**

United States District Court, S.D. New York.

March 16, 2004.

Robert Gordon, C. Sanders McNew, Stanley N. Alpert, Weitz & Luxenberg, P.C., New York, NY, Liaison Counsel for Plaintiffs.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery, New York, NY, Liaison Counsel for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This consolidated multi-district litigation ("MDL") initially involved several putative class actions brought on behalf of private well-owners seeking relief from contamination of their wells. By opinion and order dated July 16, 2002, I denied plaintiffs' motion for class certification, *see In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323 (S.D.N.Y.2002), and the putative class actions subsequently settled.

In 2003, dozens of new MTBE products liability cases were filed in state courts around the country. The new actions are brought by numerous plaintiffs, including states, cities, municipalities and entities, seeking relief from contamination or threatened contamination of groundwater. Defendants removed many of the actions to federal court. Many of the cases removed to the Southern District of New York were assigned to me as the presiding judge over MDL 1358; others removed to this district were transferred to me as related cases. Defendants asked that

cases removed to other federal district courts be transferred to this Court, pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict Litigation ("JPML") and 28 U.S.C. § 1407. On February 6, 2004, the JPML transferred thirteen cases to this Court,[1] and an additional thirty cases were conditionally transferred on February 25, 2004.

Plaintiffs now move to remand all of these actions to the state courts, arguing that the federal court lacks subject matter jurisdiction.

## I. BACKGROUND

### A. The Allegations

The complaints, though not identical, allege essentially the same facts.[2] MTBE is a chemical compound that is a by-product of the gasoline refining process. It has enhanced solubility in water, and is chemically attracted to water molecules. Sometime after 1979, in an effort to boost the octane level in higher grades of gasoline, defendants began manufacturing, distributing and/or selling gasoline containing MTBE in concentrations averaging approximately two to four percent by weight. Since 1990, defendants have added MTBE to gasoline in concentrations of up to fifteen percent. The publicly articulated justification for adding MTBE to gasoline is that it helps fuel burn more efficiently, thereby reducing air pollution. *See* Complaint ¶¶ 68–70, 72, 74, 155, 158.

Whenever gasoline containing MTBE leaks, spills or is otherwise released into the environment, it travels rapidly and contaminates groundwater. This contamination causes water to have a foul smell, and renders it unusable and unfit for human consumption. Moreover, MTBE is a known animal carcinogen, and is linked to many potential human health problems. Water contamination occurs from normal, everyday use of gasoline containing MTBE—*e.g.* gasoline drips from gas station pumps—and when MTBE is stored in leaking underground tanks. MTBE is also discharged into the air as exhaust as a bi-product of car engine combustion of gasoline containing MTBE. As a result, groundwater is further contaminated because rain returns the discharged MTBE to the soil. *See id.* ¶¶ 78, 80–84, 121.

Plaintiffs allege that as early as 1980, defendants were aware of the risk that MTBE posed to groundwater because of well contamination in Rockaway, New Jersey. Throughout the 1980s and 90s, subsequent contamination of other wells and aquifers, as well as scientific studies and reports, confirmed the risks posed by MTBE. Although defendants publicly denied the risks, their own documents confirm that they were aware of the harm posed by their use of MTBE. *See id.* ¶¶ 97–106, 113–120.

Because adding MTBE to gasoline allowed defendants to cheaply increase the

1. Originally, the February 6 transfer order conditionally transferred sixteen cases to the Southern District of New York. Within fifteen days of the conditional transfer, parties in three of the actions filed objections. Therefore, the transfers of those three cases is stayed pending resolution by the Panel of the objections. No objections were filed in the remaining thirteen actions, and the transfer of those actions became effective on February 24, 2004.

2. The facts recited herein are mere allegations, and do *not* constitute findings of the Court. Because the facts alleged in the various complaints are more or less identical, and any differences do not affect the jurisdictional analysis, for purposes of this motion I will describe and refer to the allegations set forth in *Water Authority of Western Nassau v. Amerada Hess Corp. et al.*, No. 03 Civ. 9544, and defendants' Notice of Removal in the same action.

octane levels in gasoline, and provided a use for the refining process by-product, defendants conspired to convince the public and the Environmental Protection Agency ("EPA") that adding MTBE to gasoline is safe and desirable. Defendants thereafter failed to provide EPA with information it sought regarding MTBE's safety, and persuaded EPA not to undertake additional testing of MTBE *See id.* ¶¶ 122–136, 147–149. These actions constitute "Defendants' pattern of exaggerating the environmental benefits of MTBE while understating or concealing MTBE's real environmental hazards, all of which Defendants knew or should have known . . .". *Id.* ¶ 137.

Despite their knowledge of the threat posed by MTBE, defendants have continued to use MTBE as an oxygenate in gasoline and have even increased the concentrations, although safer alternatives are available. Moreover, plaintiffs claim that defendants had a duty to disclose the risk of MTBE, but failed to do so. *See id.* ¶¶ 96, 144, 145, 158, 161.

As a result of defendants' actions and their failure to warn, MTBE is the second most frequently detected chemical in groundwater in the United States, and wells throughout the country are contaminated. The nation's drinking water is threatened by the contamination. *See id.* ¶¶ 163–168.

Based on these facts, plaintiffs assert causes of action for (1) public nuisance, (2) strict liability for design defective and/or defective product, (3) failure to warn, (4) negligence, (5) private nuisance, (6) deceptive business acts and practices in violation of New York's General Business Law,

and (7) violation of the New York Oil Spill Prevention, Control and Compensation Act. *See id.* ¶¶ 184–233. Plaintiffs also allege that defendants conspired to conceal the dangers of MTBE and mislead the public and the EPA. Because MTBE released into the environment lacks identifying characteristics, it is impossible to identify the manufacturer responsible for specific groundwater contamination. Plaintiffs therefore allege market share, concert of action and enterprise liability. *See id.* ¶¶ 170, 174, 176, 178, 180–183.

### B. Grounds for Removal

Defendants removed the actions to federal court, asserting four grounds for federal subject matter jurisdiction: (1) federal agent jurisdiction pursuant to section 1442(a)(1) of Title 28; (2) preemption; (3) bankruptcy jurisdiction, pursuant to section 1334(b) of Title 28;[3] and (4) substantial federal question.

In support of removal, defendants allege that in 1977, Congress amended the Clean Air Act to federalize fuel content requirements. *See* 42 U.S.C. § 7545. Pursuant to the amendment, EPA has express and exclusive authority to determine what fuels and fuel additives are sold nationwide. *See* Defendants' Notice of Removal ¶¶ 13, 14. By Federal Regulations issued in 1979 and 1981, EPA allowed MTBE to be added to gasoline in amounts of up to fifteen percent by weight.[4] *See* 44 Fed. Reg. 12,242, 12,243 (Mar. 6, 1979); 46 Fed. Reg. 38,582 (July 28, 1981); Defendants' Notice of Removal ¶ 15.

In 1990, Congress further amended the Clean Air Act. Among other things, the

---

**3.** It is undisputed that Texaco, the predecessor to defendant Chevron–Texaco, filed for bankruptcy on April 12, 1987. The bankruptcy court confirmed Texaco's reorganization plan on March 23, 1988.

**4.** Notably, EPA's regulations pertaining to fuel content span more than 400 pages of the Code of Federal Regulations. Defendants' Notice of Removal ¶ 33.

amendments created two programs that require petroleum refiners to blend oxygenates into gasoline sold throughout much of the country. These programs—the Oxygenated Fuel Program ("OFP") and the Reformulated Gasoline ("RFG") Program—were designed to reduce emission of toxic air pollutants. According to defendants, at the time the amendments were enacted, Congress was aware that only a limited number of oxygenates could be blended with gasoline to meet the requirements, and MTBE would have to be used for at least some of the gasoline sold in areas affected by the programs. Defendants' Notice of Removal ¶¶ 16–20. Moreover, "Congress and [the] EPA fully understood that MTBE would be used in the vast majority of oxygenated gasoline sold in the United States," *id.* ¶ 19 (citing 136 Cong. Rec. S6383 (daily ed. May 16, 1990) (statement of Sen. Daschle)), and "intended that petroleum refiners use MTBE in gasoline," *id.* ¶ 23.

In 1991, pursuant to the 1990 amendment to the Clean Air Act, the EPA approved the use of seven compounds to achieve the requirements set forth in the OFP.[5] These additives are: (1) MTBE, (2) ethanol, (3) methanol, (4) tertiary amyl methyl ether, (5) ethyl tertiary butyl ether, (6) tertiary butyl alcohol, and (7) diisoproyl ether. *See id.* ¶ 26 (citing Proposed Guidelines for Oxygenated Gasoline Credit Programs Under Section 211(m) of the Clean Air Act as Amended, 56 Fed. Reg. 31,151, 31,154 (July 9, 1991)). According to defendants, "[l]ike Congress, the EPA understood that MTBE would be 'the most common oxygenating compound' used by refiners to comply with the CAA's new air emissions standards." *Id.* ¶¶ 28 (quoting Approval and Promulgation of Implementation Plan, 56 Fed. Reg. 5,458, 5,465 (Feb. 11, 1991)), 29, 31.

Finally, defendants claim that when the EPA approved MTBE for use in compliance with the OFP and RFG Program, it knew of the risk that MTBE posed to groundwater, and further knew that there was not a sufficient nationwide supply of ethanol, or even an infrastructure to create ethanol, to satisfy the program requirements. Accordingly, EPA knew that the *only* way refining companies could meet the requirements promulgated in the OFP and RFG Programs, and thereby comply with the Clean Air Act, was to use MTBE as a gasoline additive. Congress and the EPA therefore effectively directed defendants to use, manufacture and/or sell gasoline that contains MTBE. *See id.* ¶¶ 19, 23, 34.

## II. APPLICABLE LAW

### A. General Principles

 A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *See Carson v. Dunham,* 121 U.S. 421, 425–26, 7 S.Ct. 1030, 30 L.Ed. 992 (1887); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Moreover, the rules for removal are strictly construed. *See Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 31, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). It is well-established that "[t]o determine whether the claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint and ignore potential defenses: 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or

---

**5.** In 1994, EPA approved the same seven additives for use in the RFG Program. *See id.* ¶ 29.

that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.* at 2062.

There are, however, two exceptions to the general rule. *First*, a state law claim may be removed to federal court when the claim is completely preempted by federal law. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court." *Beneficial Nat'l Bank*, 123 S.Ct. at 2063. The Supreme Court has found "complete preemption" in only two types of cases: certain causes of action under the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"). *See id.* Recently, the Second Circuit found complete preemption in a third category of cases: those arising under the Securities Litigation Uniform Standards Act ("SLUSA"). See *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 124 n. 5 (2d Cir.2003). In so finding, the Court of Appeals emphasized that "the complete preemption doctrine must be applied sparingly and with great restraint." *Id.*

*Second*, an action may be removed to federal court where Congress so provides. Thus, where a statute specifically gives federal courts jurisdiction over a particular subject matter, and states that actions involving that subject matter may be removed to federal court despite the absence of federal claims, removal is proper even where the "well-pleaded complaint" rule is not satisfied. *See, e.g.,* 42 U.S.C. § 2014 (providing federal courts with jurisdiction over tort actions arising from nuclear accidents expressly allowing removal of such actions even when only state law claims are asserted); *see also Beneficial Nat'l Bank*, 123 S.Ct. at 2062–63 (discussing statutes that expressly allow removal to federal court even where no federal cause of action is asserted on the face of the complaint).

## B. Federal Agent Jurisdiction

### 1. Background

Section 1442(a) of Title 28 provides that, "[a] civil action [ ] commenced in a State court against [ ] the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: [ ] Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office ...". 28 U.S.C. § 1442(a)(1). This statute falls into the second of the two exceptions to the well-pleaded complaint rule because Congress has expressly provided that actions against persons acting under color of an office or agency of the United States may be removed to federal court, despite the absence of any federal cause of action. *See Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) ("Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint"); 16 James Wm. Moore et al., *Moore's Federal Practice*, ¶ 107.15[1][b] ("[T]here is no requirement that the state action [removed pursuant to section 1442(a)] be one that

could have been originally filed in the federal courts.").

Although section 1442(a) permits removal regardless of whether the complaint *states* a federal cause of action, the action must nonetheless *raise* an issue of federal law. *See* U.S. Const., art. III § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ..."). This requirement is met if the defense depends on federal law. "It is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes. The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California,* 489 U.S. 121, 126, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). *See also Jefferson County,* 527 U.S. at 430–31, 119 S.Ct. 2069 ("Under the federal officer removal statute ... the federal-question element is met if the defense depends on federal law.").

The Supreme Court has explained the justification for the federal officer removal statute:

> The purpose of [the statute in its various forms throughout history] is not hard to discern. As this Court said nearly 90 years ago in *Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1879), the Federal Government can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general

government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members. For this very basic reason, the right of removal under s 1442(a)(1) is made absolute whenever a suit in a state court is for any act under color of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a federal interest in the matter, the very basic interest in the enforcement of federal law through federal officials.

*Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) (citations and quotation marks omitted); *see also Mesa,* 489 U.S. at 126, 109 S.Ct. 959.

■ The Supreme Court has emphasized that the federal officer removal statute is neither narrow nor limited, and has rejected lower court interpretations that circumscribe its scope. *See Willingham,* 395 U.S. at 406, 89 S.Ct. 1813 (the policies underlying section 1442(a) "should not be frustrated by a narrow, grudging interpretation"); *Arizona v. Manypenny,* 451 U.S. 232, 241–42, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Reiser v. Fitzmaurice,* 1996 WL 54326, at *3 (S.D.N.Y. Feb. 8, 1996) ("The policy of supremacy underlying section 1442(a)(1) has prompted federal courts to construe it broadly ..."). A defendant seeking to remove pursuant to section 1442(a) need only provide "candid, specific and positive" allegations that the conduct complained of was undertaken pursuant to the directions of a federal office or agency. *Willingham,* 395 U.S. at 409, 89 S.Ct. 1813. "A plaintiff may not challenge the factual allegations in the notice of removal, but the plaintiff may challenge their legal

sufficiency." 16 James Wm. Moore et al., *Moore's Federal Practice*, ¶ 107.15[1][b][iv][B]; *see also Colorado v. Symes*, 286 U.S. 510, 518–19, 52 S.Ct. 635, 76 L.Ed. 1253 (1932).

■ Moreover, if a case is properly removed pursuant to section 1442(a)(1), the district court has discretion to retain jurisdiction and adjudicate the merits of the case even after the federal officer or agency aspect is dismissed. *See IMFC Prof. Serv. of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 158–60 (5th Cir.1982) ("[E]limination of the federal officer from a removed case does not oust the district court of jurisdiction"); *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir.1974) ("The modern rule (and the law of this circuit) is that a federal court does have the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings."); *New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv. Inc.*, 719 F.Supp. 325, 334 (D.N.J.1989) ("If a court dismisses the federal defendant from [ ] a case [removed pursuant to section 1442(a)(1)], it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.").

### 2. Requirements

■ Under section 1442, a private party may remove a state court action if (1) it acted under the direction of a federal agency or officer; (2) it has a colorable federal defense; and (3) there is a causal nexus between the federal direction and the conduct in question. *See Jefferson County*, 527 U.S. at 431, 119 S.Ct. 2069; *Mesa*, 489 U.S. at 124–25, 109 S.Ct. 959; *In re Agent Orange Product Liab. Litig.*, 304 F.Supp.2d 442, 446–47 (E.D.N.Y. 2004);[6] 16 James Wm. Moore et al., *Moore's Federal Practice*, ¶ 107.15[1][b][ii].

A defendant meets the first requirement of "acting under the direction of a federal agency or officer" by "showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 946–47 (E.D.N.Y.1992); *see also Bakalis v. Crossland Sav. Bank*, 781 F.Supp. 140, 145 (E.D.N.Y.1991) ("The rule that appears to emerge from the case law is one of 'regulation plus.' "). Although there is "no precise standard for the extent of control necessary to bring an individual with the 'acting under' clause," *Gurda Farms Inc. v. Monroe County Legal Assistance Corp.*, 358 F.Supp. 841, 844 (S.D.N.Y.1973), "a cursory survey of the application of [section 1442(a)] reveals it has been construed broadly, and its 'persons acting under' pro-

---

**6.** In *In re Agent Orange*, Judge Jack B. Weinstein described the three requirements slightly differently: "First, a defendant must demonstrate that it is a 'person' within the meaning of the statute. Second, the defendant must establish that the suit is for any act under color of [federal] office, i.e., there is a causal connection between the charged conduct and asserted official authority. Causation exists if the predicate acts of the state suit were undertaken while a person was acting as or under a federal officer, and the acts were under color of the relevant federal office. Third, defendants must raise a colorable claim to a federal

law defense." 304 F.Supp.2d at 446–47 (quotation marks omitted). Nonetheless, the substance of the requirements is the same.

There is no doubt that the defendants in these actions constitute "persons" for purposes of section 1442(a) because "unless the context indicates otherwise ... the words 'person' and 'whoever' include corporations, companies, ..., and joint stock companies, as well as individuals...." 1 U.S.C. § 1; *see also Group Health Inc. v. Blue Cross Ass'n*, 587 F.Supp. 887, 890 (S.D.N.Y.1984) (corporations are entitled to remove under section 1442(a)).

vision particularly so," *id.* at 843.[7] *See also Agent Orange Product Liab. Litig.,* 2004 WL 231187, at *4 ("Courts interpret the [persons acting under color of federal office or agency] rule broadly to achieve the protective purpose of the statute.").

The second requirement for federal officer removal—a colorable federal defense—is also broadly construed. "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. We therefore do not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson County,* 527 U.S. at 431, 119 S.Ct. 2069 (citation omitted) (quoting *Willingham,* 395 U.S. at 407, 89 S.Ct. 1813). Thus, a defense may be "colorable" even if it is ultimately rejected by the court. *See id.* "[A]t the removal stage, it is not the Court's role to assess the validity of a particular defense. The Supreme Court made clear in *Willingham* that the phrase 'under color of ... office' allows removal even if, on the record then existing, it could not be said that 'the officers had a clearly sustainable defense.'" *Reiser,* 1996 WL 54326, at *3 (alteration in original); *see also Symes,* 286 U.S. at 519,

52 S.Ct. 635 (where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith.").

Finally, the "causal nexus" element of section 1442(a) requires that the defendant aver, in the removal notice, that the act complained of by the plaintiff was undertaken pursuant to the directions of a federal office or agency. The Supreme Court has explained:

> The prosecution to be removed under the [federal officer removal statute] must have been instituted on account of acts done by the defendant as a federal officer under color of his office [ ]. There must be causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of federal authority and in enforcement of federal law ...

---

**7.** The *Gurda* court undertook a thorough analysis of cases in which courts have found that defendants were "persons acting under" a federal office or agency. These include *State of Texas ex rel. Falkner v. National Bank of Commerce,* 290 F.2d 229 (5th Cir.1961) (quo warranto proceeding against banks operating branch offices on military bases held removable); *State of Texas v. Heaton,* 58 F.2d 656 (N.D.Tex.1932) (upholding removal of a murder prosecution against federal prohibition agents and an informer working for them); *People of the State of Colorado v. Maxwell,* 125 F.Supp. 18 (D.Colo.1954) (murder prosecution properly removed where city police chief, under the direction of an Air Force captain, arrested and shot a soldier); *Teague v. Grand River Dam Authority,* 279 F.Supp. 703 (N.D.Okl.1968) (wrongful death action properly removed where defendant, acting under license from the Federal Power Com-

mission and at the direction of a member of the Army Corps of Engineers, opened floodgates resulting in a death); *Kuenstler v. Occidental Life Ins. Co.,* 292 F.Supp. 532 (C.D.Cal. 1968) (upholding removal of an action for $72 from the Small Claims Court against a private insurance company which had contracted with the federal government to administer benefit provisions of Medicare); *Allen v. Allen,* 291 F.Supp. 312 (S.D.Iowa 1968) (allowing removal of a garnishment action against a doctor who treated patients under Medicare); *State of Oregon v. Cameron,* 290 F.Supp. 36 (D.Or.1968) (upholding removal of a criminal trespass action against VISTA volunteers who entered property to render medical assistance, on the grounds that the VISTA workers were persons acting under an officer of the United States and performed work contemplated by a federal statute, 42 U.S.C. § 2991, though they were not federal employees).

*Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 70 L.Ed. 449 (1926) (quotation marks omitted). "The 'causal nexus' is [ ] satisfied when there is evidence of intimate government involvement in the design decisions causally related to the alleged tort.... [D]efendants must show that the government directed the actions on which the plaintiffs based their claims." *Agent Orange Product Liab. Litig.,* 304 F.Supp.2d at 448–49 (citing *Arness v. Boeing North American Inc.,* 997 F.Supp. 1268, 1275 (C.D.Cal.1998)); *see also Willingham,* 395 U.S. at 409, 89 S.Ct. 1813.

### III. DISCUSSION

#### A. Defendants Allege They "Acted Under a Federal Agency" When They Used MTBE as an Additive

■ In their Notice of Removal, defendants allege that the Clean Air Act, and regulations promulgated thereunder, require them to blend oxygenates into gasoline. Although the EPA has identified seven additives that may be used to meet these requirements, MTBE is the only approved oxygenate that is available in quantities sufficient to comply with the Act and regulations. Moreover, defendants allege that at the time the Clean Air Act was amended and the seven oxygenates were approved for use, both Congress and the EPA were aware that defendants would *have to use* MTBE in order to comply with the Act's requirements. *See supra* Part I.B. Thus, defendants have sufficiently alleged that they added MTBE to gasoline at the direction of the EPA, a federal agency, thereby meeting the first requirement of removal pursuant to section 1442(a)(1). *See Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 399 (5th Cir.1998) (holding that manufacturers of Agent Orange acted at the direction of a federal office or agency, for purposes of the federal officer removal statute, because the federal government required defen-

dants to produce Agent Orange to certain specifications).

This conclusion is supported by the case law and the policies underlying the federal officer removal statute. As noted above, the "persons acting under" requirement is broadly construed. *See Gurda Farms,* 358 F.Supp. at 844; *Agent Orange Product Liab. Litig.,* 304 F.Supp.2d at 447–48. Moreover, remanding these cases to state court would pose precisely the risk that the Supreme Court warned against in *Willingham.* Specifically, defendants, having acted pursuant to directives of the federal government, would be "brought to trial in a State court, for an alleged offense against the law of the State, [and] ... the general government [would be] powerless to interfere at once for their protection." 395 U.S. at 406, 89 S.Ct. 1813. Such a prosecution has the potential to interfere with the enforcement of federal law.

Plaintiffs argue that a finding that defendants acted at the direction of a federal agency will "in effect, [ ] Federalize all tort litigation against manufacturers of products subject to Federal regulation—cigarettes, automobiles, pharmaceuticals, asbestos, and many other consumer and industrial products too numerous too mention." Plaintiffs' Memorandum of Law in Support of Motion To Remand ("Pl. Mem.") at 12. This argument is not persuasive. Defendants do not seek removal simply because gasoline is subject to regulation. Instead, defendants argue that the federal government *required* them to add MTBE to gasoline, the conduct upon which plaintiffs' claims are based. Thus, removal pursuant to section 1442(a)(1) is premised not on defendants' participation in a regulated industry, but rather the fact that defendants took actions at the express direction of the federal government, and those actions are the basis for the complaints. There is simply no reason to

believe that this invocation of the federal officer removal statute will "[f]ederalize all tort litigation," Pl. Mem at 12, because defendants in tort litigation do not typically assert that their actions were undertaken at the direction of the federal government.[8]

### B. Defendants Allege a Colorable Federal Defense

Defendants claim that plaintiffs' state law claims are expressly preempted. Specifically, section 7545(c)(4)(A)(ii) of Title 42,[9] a provision of the Clean Air Act, "forbade the states to regulate the content of fuels or fuel additives." Defendants' Opposition to Plaintiffs' Motion to Remand ("Def. Opp.") at 11. According to defen-

dants, this provision expressly preempts any state statute that interferes with federal controls and/or prohibitions on fuel and fuel additives. Defendants argue that plaintiffs' state law claims seek to penalize defendants for adding MTBE to gasoline, and to ban MTBE's future use. Therefore, say defendants, the state law claims constitute an attempt to regulate the content of fuel and fuel additives, in violation of section 7545(c)(4)(A)(ii.). *See* Def. Opp. at 11, 23–28.

Alternatively, defendants contend that the doctrine of conflict preemption bars plaintiffs' state law claims. Conflict preemption requires a finding that either (1) it would be impossible for defendants to com-

---

**8.** Moreover, the cases upon which plaintiffs rely in support of their argument are unavailing. As an initial matter, *Ryan*, 781 F.Supp. 934, is no longer good law, to the extent it rejects invocation of the federal officer removal statute in the context of Agent Orange litigation. *See Agent Orange Product Liab. Litig.*, 2004 WL 231187, at *1 ("Federal jurisdiction is properly asserted under the federal officer removal statute. A prior decision of this court reached a contrary conclusion in an Agent Orange case. The *Ryan* decision is no longer persuasive. As the Court of Appeals for the Fifth Circuit pointed out in rejecting *Ryan*'s conclusion, this court recognized its decision on the point as 'close' and 'uncertain.'" (citation omitted) (citing *Winters*, 149 F.3d at 392)).

Plaintiffs' reliance on *Tremblay v. Philip Morris, Inc.*, 231 F.Supp.2d 411 (D.N.H. 2002), and *Little v. Purdue Pharma L.P.*, 227 F.Supp.2d 838 (S.D.Ohio 2002), is similarly misplaced. In *Tremblay*, plaintiffs alleged that Philip Morris designed light cigarettes and manipulated their content to produce misleading tar and nicotine ratings as measured by a method endorsed by the Federal Trade Commission. Neither plaintiffs nor defendant argued that Philip Morris designed the cigarettes and manipulated their content *at the direction of the FTC or any other federal agency*. Thus, plaintiffs' claims were not based on actions undertaken at the direction of a federal office or agency, and the district court rejected defendant's invocation of the

federal officer removal statute. 231 F.Supp.2d at 417–19.

Similarly, in *Little v. Purdue Pharma*, plaintiffs sought recovery for injuries arising from exposure to the prescription drug OxyContin. Defendants removed the action to federal court pursuant to section 1442(a)(1), arguing that because of the "highly regulated nature of the pharmaceutical industry, [ ] pharmaceutical manufacturers [should] be regarded as de facto federal officers." 227 F.Supp.2d at 860. But the *Little v. Purdue Pharma* defendants did *not* allege that their actions giving rise to the complaint were undertaken at the direction of a federal office or agency, and the district court therefore rejected their argument. *See id.* at 861–62.

**9.** Section 7545(c)(4)(A)(ii) of the Clean Air Act states, in pertinent part,

> [N]o State (or political subdivision thereof) may prescribe or attempt to prescribe, for purposes of motor vehicle emission control, any control or prohibition respecting any characteristic or component of a fuel or fuel additive in a motor vehicle engine … if [EPA] has prescribed … a control or prohibition applicable to such characteristic or component of a fuel additive, unless State prohibition or control is identical to the prohibition or control prescribed by [EPA].

42 U.S.C. § 7545(c)(4)(A)(ii).

ply with both the state law sought to be imposed and the federal requirements; or (2) the state law sought to be imposed would prove an obstacle to the achievement and execution of the full purposes and objectives of Congress. *See English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Defendants submit that because MTBE is the only approved oxygenate available in quantities necessary to meet the Clean Air Act's requirements, it would be impossible for them to adhere to the state laws sought to be imposed—which would effectively ban MTBE—and the federal requirements. Moreover, defendants argue that "finding them liable for using MTBE, one of a limited number of federally approved oxygenates, would present an obstacle to the achievement of the federal objectives of the CAA and the RFG program." *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F.Supp.2d 593, 614 (S.D.N.Y., 2001) (*"MTBE I"*).

At this stage of the litigation, there is no need to decide whether defendants will prevail on either of these defenses. The only issue is whether one or both of these defenses is colorable. *See Jefferson County*, 527 U.S. at 431, 119 S.Ct. 2069; *Willingham*, 395 U.S. at 407, 89 S.Ct. 1813; *Symes*, 286 U.S. at 519, 52 S.Ct. 635; *Reiser*, 1996 WL 54326, at *3. Although I previously have rejected defendants' preemption arguments, *see MTBE I*, 175 F.Supp.2d at 611–16, defendants urge me to reconsider that ruling, and emphasize that the allegations now before the Court are different than the allegations in *MTBE I*.

The preemption defenses argued in *MTBE I* were, without doubt, colorable. Moreover, since that decision, several courts have concluded that state law claims involving MTBE contamination *are*

conflict preempted. *See Molloy v. Amerada Hess Corp.*, No. 2001/396, slip op. at 5 (Dutchess Co. Aug. 1, 2002); *Coppola v. Amerada Hess Corp.*, No.2001/3995, slip op. at 5 (Dutchess Co. July 31, 2002); *Hixon v. Unocal Corp.*, Case No. BC 195295 (Super. Ct. Los Angeles County, Aug. 23, 2001); *Kubas v. Unocal*, Case No. BC 191876, 2001 WL 1940938 (Super. Ct. Los Angeles County, Aug. 23, 2001). Given these circumstances, I have no doubt that the preemption defenses asserted by defendants in this litigation are colorable. The allegations now before me are somewhat different than the allegations that were before me in *MTBE I*. Accordingly, defendants have the right to assert these defenses in the context of the current complaints. Because defendants need only assert a "colorable" federal defense in support of removal pursuant to section 1442(a)(1), they have met their burden.

## C. Defendants Allege a "Causal Nexus"

Finally, defendants clearly allege that the acts upon which plaintiffs' claims are based—namely, manufacturing and selling gasoline containing MTBE—were undertaken at the direction of the EPA, a federal agency. Not only do defendants allege that they are participants in a highly regulated industry, they also claim that the federal government was "intimately [ ] involved" in their decision to add MTBE to gasoline. *Agent Orange Product Liab. Litig.*, 304 F.Supp.2d at 448–49 *see also Willingham*, 395 U.S. at 409, 89 S.Ct. 1813. Therefore, defendants sufficiently aver, in their notice of removal, the "causal nexus" required for removal pursuant to the federal officer removal statute.

## IV. Other Grounds for Removal Not Considered

Because I conclude that the actions were properly removed pursuant to the federal

officer removal statute, 28 U.S.C. § 1442(a)(1), I need not address defendants' other proffered grounds for jurisdiction. *See Horne v. Coughlin,* 178 F.3d 603, 606 (2d Cir.1999) (courts should avoid issuing advisory opinions on issues unnecessary for adjudication of the case before the court). Notably, however, defendants' preemption argument is the "colorable federal defense" underlying the removal pursuant to section 1442(a)(1), *see supra* Part III.B, and therefore undoubtedly will be fully addressed in subsequent motion practice.

Additionally, I note that defendants' argument regarding jurisdiction on the basis of a "substantial federal question" is troubling. The Supreme Court has said that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). However, the Court has cautioned against broad interpretations of *Franchise Tax Board,* saying that it,

> did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.... Far from creating some kind of automatic test, *Franchise Tax Board* thus candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction. Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system.

*Merrell Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 813–14, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). As noted above, though, I need not decide at this time whether jurisdiction based on substantial federal question would run afoul of *Merrell Dow Pharmaceuticals.*

Finally, though Texaco's 1987 bankruptcy may provide this Court with jurisdiction over Chevron Texaco, that bankruptcy certainly does not divest the state court of jurisdiction. Because it is unclear that this litigation will implicate the bankruptcy at all, *see* Transcript of 2/13/04 oral argument, and the issue of the bankruptcy will not even arise until after a finding of liability, I would be hesitant to exercise jurisdiction over dozens of defendants in a multi-district litigation merely because a single defendant filed for bankruptcy and reorganized under Chapter 11 more than fifteen years ago. However, I do not decide that question today.

## V. CONCLUSION

Defendants have sufficiently averred facts supporting removal pursuant to section 1442(a)(1) of Title 28. Specifically, defendants allege that (1) they added MTBE to gasoline at the direction of the EPA, a federal agency; (2) they have a colorable federal defense of preemption; and (3) there is a causal connection between plaintiffs' claims and the acts defendants undertook at the direction of the EPA. For this reason, plaintiffs' motions to remand are denied. The Clerk of the Court is directed to close these motions. A conference is scheduled for March 23, 2004 at 10:30 a.m.

SO ORDERED: