**People of the State of NEW YORK, Plaintiff,**

v.

**Richard A. GRASSO, Kenneth G. Langone, and The New York Stock Exchange, Inc., Defendants.**

**No. 04 Civ. 4565(GEL).**

United States District Court, S.D. New York.

Dec. 9, 2004.

Eliot Spitzer, Attorney General of the State of New York, by Avi Schick, Deputy Counsel to the Attorney General of the State of New York, (David Axinn, Assistant Solicitor General of the State of New York, of counsel) for Plaintiff.

Brendan V. Sullivan, Jr. (pro hac pending), Gerson A. Zweifach, Victoria Radd Rollins (pro hac pending), Steven M. Farina (pro hac pending), Williams & Connolly LLP, Washington, DC for Defendant Richard A. Grasso.

Gary P. Naftalis, Ronald S. Greenberg, Timothy P. Harkness, Kramer Levin Naftalis & Frankel LLP, for Defendant Kenneth G. Langone.

Dan K. Webb, Robert L. Michels, Adam J. Schlatner, Winston & Strawn LLP, New York, N.Y. for Defendant New York Stock Exchange, Inc.

## OPINION AND ORDER

LYNCH, District Judge.

The Attorney General of the State of New York ("AG") brings this action in New York State Supreme Court against the New York Stock Exchange ("NYSE") and its former Chairman and Chief Executive Officer, Richard A. Grasso, alleging

that the NYSE violated New York's Not–for–Profit Corporation Law by paying Grasso compensation that was not "reasonable" and "commensurate with services performed" as required by the law. *See* N.Y. Not–for–Profit Corp. Law § 202(a)(12). Grasso removed the case to this Court, and the AG now moves to remand the case to the state court. The motion will be granted.[1]

## FEDERAL JURISDICTION

■ Grasso asserts that this action is removable under two different statutes. First, 28 U.S.C. § 1441(a) permits defendants in state-court actions to remove "any civil action ... of which the district courts have original jurisdiction." Original federal question jurisdiction, in turn, is tested under the "well-pleaded complaint rule," which provides that a lawsuit is "founded" on a federal claim or right only where the federal claim appears on the face of the complaint. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A federal issue raised by defendants as a defense will not suffice to warrant removal. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).[2] Nevertheless, a plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420

(1983). Similarly, "[i]f the plaintiff's statement of his or her state-law claim in a well-pleaded complaint 'necessarily depends on resolution of a substantial question of federal law,' then the 'case may also arise under federal law.'" *Bracey v. Board of Educ.*, 368 F.3d 108, 113 (2d Cir.2004), quoting *Franchise Tax Bd.*, 463 U.S. at 28, 103 S.Ct. 2841, and *Barbara v. NYSE*, 99 F.3d 49, 54 (2d Cir.1996). But under these rules, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one of the ... claim[s] is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841.

■ Second, 28 U.S.C. § 1442(a)(1), "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States ..., sued in an official or individual capacity for any act under color of such office" may remove such an action to federal court. Removal under § 1442(a)(1) requires three elements: (1) the removing defendant is or acted under the direction of a federal agency or officer; (2) he has a colorable federal defense; and (3) there is a causal connection between the conduct in question and the federal directive. *Mesa v. California*, 489 U.S. 121, 133–34, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Willingham v. Morgan*, 395 U.S. 402, 406–09, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see In re Methyl Tertiary Butyl Ether Products ("MTBE") Liability Litigation*, 342 F.Supp.2d 147, 153–54 (S.D.N.Y.2004).

1. The parties have also filed several other motions. In view of the Court's conclusion that it lacks jurisdiction over this matter, the Court has no need, and indeed no authority, to address the merits of those motions.

2. There is an exception to this principle for a limited number of federal statutes that are

held to "completely" pre-empt state law, thus not merely providing a federal defense but transforming pre-empted state-law claims into propositions of federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Grasso does not rely on this doctrine.

While these two provisions have distinct requirements, and must be analyzed separately, there is substantial similarity and overlap between them as applied to this case. In each case, the existence of federal jurisdiction over the case turns in substantial part on the characterization of the AG's complaint. The AG contends that the action is a garden-variety (if high-profile) suit by the State of New York against a not-for-profit corporation incorporated under its law to enforce requirements of that law governing the substantive and procedural propriety of compensation paid to its officers. Grasso, however, pointing to the NYSE's role as a federally-regulated stock exchange and self-regulating organization under the federal securities laws, argues that the suit is "really" an attack on Grasso's and the NYSE's actions as a federal regulator and regulatee. Thus, before turning to an analysis of the legal standards applicable under each of these removal statutes, it is necessary to examine in detail the allegations of the complaint.

## THE COMPLAINT

The opening paragraph of the complaint sets forth the essence of the AG's claim. After noting that New York law requires that compensation paid to officers of not-for-profit corporations be "reasonable," the complaint charges that Grasso's compensation "violate[d] this principle" because it was

(i) objectively unreasonable; (ii) the product of a process that permitted Grasso improperly to influence both the amounts awarded to him and the members of the [NYSE] Compensation Committee and Board of Directors who were required to approve those awards; and (iii) approved by the ... Board ... based upon materially incomplete, inaccurate and misleading information. .

(Compl.¶ 1.) The complaint thus charges that Grasso's compensation (amounting to a total of nearly $190 million during his eight-year tenure) was both substantively excessive (subparagraph i) and the product of procedures that were flawed both structurally (subparagraph ii) and specifically in reference to the decision on his compensation (subparagraph iii). Based on the factual allegations underlying this tripartite claim, the complaint sets forth eight causes of action against Grasso, the NYSE, and Kenneth G. Langone, a former NYSE director and chairman of the Board's Compensation Committee, all premised on state law—eight claims under the Not-for-Profit Corporations Law and two under New York common law.

As thus summarized, it is not apparent that the complaint states any claim under federal law or implicates any question requiring the interpretation of federal law. The AG charges the defendants with violations of various principles of New York statutory and common law. The basic allegation is that the compensation paid to Grasso was unreasonable, both because it was objectively excessive, and because it was the product of a process that was infected with conflict of interest (in that Grasso was in a position to influence the actions of those who would decide on his compensation) and misrepresentation (in that the Board that voted it was provided with inaccurate information). No reference is made to federal law, and it is difficult to see how federal law could play any role in deciding the case. No principle of federal law must be referred to in order to decide how much compensation is reasonable under New York corporation law, or whether compensation voted by directors who were misinformed or not truly independent violates the principle of reasonable compensation embodied in New York law. Nor is there any apparent reason to believe that federal law shields the

payment of excessive compensation, or authorizes compensation to be voted by conflicted or uninformed directors of state corporations.

The complaint goes on to elaborate the specifics of its claims in fifty-four pages of factual allegations and legal claims. Like the opening paragraph, the factual allegations fall into three parts. A substantial portion of the complaint is devoted to setting forth the nature and amount of Grasso's compensation, which was certainly ample. Nearly seven pages of the complaint, comprising twenty paragraphs, is consumed simply by setting forth the terms of the various compensation provisions, including salaries, bonuses, incentive plans, and benefits of various kinds, and analyzing those provisions in relation to other facts purportedly supporting the AG's contention that the compensation was in itself excessive and unreasonable. (Compl. ¶¶ 32–51.) [3] Another five pages, comprising seventeen paragraphs, is devoted to setting out and criticizing the methodology purportedly used to set that compensation. (*Id.* ¶¶ 52–68.)

The principal section of the complaint on which Grasso relies in arguing that the case presents questions of federal law is the second, which is headed "The NYSE Governance Structure and Grasso's Regulatory Authority Over the NYSE's Directors Created Actual and Apparent Conflicts of Interest." (*Id.* ¶¶ 25–31.) This section, consisting of only seven paragraphs, refers to the NYSE's role in regulating member firms, and Grasso's power, as the operational head of the organization, to investigate and take action against them. According to the complaint, these powers, which derive from federal law, gave Grasso so much authority over member firms that Board and Compensation Committee members who are subject to the NYSE's regulatory power inherently had reason to fear Grasso, and thus were conflicted in voting on his compensation. The complaint charges that Grasso actively manipulated the compensation process, and exploited these conflicts of interest, by appointing to the Compensation Committee directors whose firms were regulated by the NYSE. This in essence is the structural procedural defect set forth in subparagraph ii of the opening paragraph of the complaint.

Moreover, in addition to setting forth the abstract conflict, the complaint goes on to allege that Grasso actually utilized or failed to utilize his regulatory authority to reward compliant members of the Board. In particular, the AG charges that Grasso ensured the approval of a transaction proposed by Merrill Lynch, whose CEO served on the Compensation Committee (Compl. ¶ 26), and failed to act against the scandalous conflicts of interest infecting equity research analysis provided by major NYSE member firms, whose executives also served on the Committee (*id.* ¶¶ 29–31). These paragraphs are the centerpiece of Grasso's argument that this case is really about the propriety of Grasso's or the NYSE's actions as a federal regulator.

Finally, the complaint extensively details the allegation that the NYSE Board was misled by the withholding of information concerning certain bonuses and fringe benefits payable to Grasso. (Compl. ¶¶ 69–156.) While Grasso highlights this section also as implicating federal interests (D.Br.3–4), there is little on the face of the complaint to support that claim. These paragraphs describe highly technical provisions of Grasso's compensation, the pro-

---

**3.** For example, the complaint alleges that "the amount the NYSE expensed in connection with Grasso's compensation and benefits for 2000 through 2002 was equal to 99 percent of the NYSE's net income during those years." (Compl. ¶ 34.)

cess by which those provisions were proposed to the Board, the information that was provided to the Board, and the AG's various allegations that critical information was withheld and that the information provided was misleading in various ways. Nothing in these paragraphs turns on the federal functions exercised by Grasso or the NYSE; the description of the benefits and the Board's deliberations could be a story about any corporation in the country.

## DISCUSSION

### I. *Federal Question Jurisdiction*

■ Grasso's claim that this Court has jurisdiction over this action under 28 U.S.C. § 1441(a), as an action founded on a federal right, is without merit.

As the above discussion makes clear, the AG's claims are all founded directly and explicitly on state law. The AG invokes no federal statute or treaty, nor does he cite federal common law or the provisions of the federal Constitution. Rather, he claims that certain actions of a New York corporation with respect to its internal governance violated provisions of the statutory and common law of New York. Nor does federal law give content to the state-law principles on which the AG relies. Whatever standards New York applies to determine whether the compensation of officers of not-for-profits is excessive, or whether such compensation is rendered unreasonable by conflicts of interest on the part of compensation committee members or reliance by boards on inadequate or inaccurate information, there is no contention that those standards incorporate by reference or depend in any way on federal law.

Grasso argues that the AG's claims of conflict of interest constitute a thinly-disguised attempt to charge him with "abusing the [NYSE's] federal regulatory pow-

ers." (D.Br.22.) A fair reading of the complaint completely refutes this interpretation. The NYSE's (and therefore Grasso's) powers, which do indeed derive from federal law, constitute the context of the complaint. But the wrongdoing alleged by the complaint is not a violation of federal law, nor do the AG's claims depend in any way on the interpretation or analysis of federal law. The complaint alleges that Grasso's regulatory authority created a conflict of interest on the part of Board and Compensation Committee members who were subject to that regulatory authority. The *source* of Grasso's power over those members is irrelevant to the theory of the complaint; the *existence* of such power is all that is necessary to ground the allegation of conflict of interest. Indeed, the very caption of this section of the complaint, trumpeted by Grasso as facially revealing the AG's alleged federal agenda (D.Br.2), quite clearly emphasizes the *structural* conflicts of interest created by the regulatory authority of the NYSE's chief executive, rather than any supposed corrupt exercise of that authority: The caption cites the NYSE's "governance structure" and Grasso's "regulatory authority," which "created ... conflicts of interest"; it does not allege that Grasso violated federal law or misused his authority.

■ The complaint's allegations that Grasso failed to block the Merrill Lynch transaction, of to take action against conflicted analyst research, do not alter this conclusion. Grasso argues that the complaint essentially charges him with failing to exercise the federally-delegated regulatory authority of the NYSE as a self-regulating organization under the securities laws in accordance with federal law. (*See, e.g.,* D. Br. 22–23.) This simply misstates the gravamen of the complaint. The complaint does not allege that Gras-

so's inaction in the Merrill and analyst matters violated federal law. Rather, it charges that his failure to act in matters in which he could have used his authority to the detriment of members of the Board and of its Compensation Committee (whether that failure to act was within his discretion or an abuse of it) brought home to those members that they were largely at Grasso's mercy. Even if the facts alleged would state a violation of federal law—a matter on which the Court expresses no opinion—that would not confer jurisdiction on this Court, since a case is not removable when, even though the "alleged misconduct overlaps with conduct that is likewise proscribed by NYSE rules," the plaintiff "seeks only to enforce state law." *Lippitt v. Raymond James Financial Services, Inc.,* 340 F.3d 1033, 1037 (9th Cir. 2003). Contrary to Grasso's argument, the complaint does not "[s]eek to [h]old Mr. Grasso [l]iable for the [m]anner in [w]hich [h]e [e]nforced the [s]ecurities [l]aws." (D.Br.22.) Rather, the AG seeks to hold Grasso liable for what the complaint alleges was the receipt of excessive and improperly determined compensation. The validity of that claim does not depend on whether Grasso's enforcement of federal securities laws or of the NYSE's rules was proper or not.

Finally, Grasso argues that this is a case in which the content of the state law duties relied upon by the AG are provided by federal law, since the AG contends that Grasso violated his fiduciary duties to the NYSE by withholding certain information and failing to correct the material misinformation that was provided to the Board regarding his compensation (Compl.¶¶ 69–70, 131), and "the rules governing Mr. Grasso's relationship with the Board were promulgated pursuant to the Exchange Act." (D.Br.26.) This argument is without merit. The AG is not suing Grasso and the NYSE for "violation of [the NYSE's] own rules and procedures," as did the plaintiff in *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 159 F.3d 1209, 1211 (9th Cir.1998), nor does federal law give content to the fiduciary duties alleged. The breach of fiduciary duty alleged is entirely predicated on state law, and rests on the unsurprising contention that a corporate officer may not accept compensation set by a Board of Directors that, to his knowledge, acted based on material misinformation that he failed to correct.[4] Here, as in *Lippitt,* and "[u]nlike the situations in *Sparta* or *D'Alessio [v. NYSE,* 258 F.3d 93, 106 (2d Cir.2001)], a state court need not inquire into NYSE regulations, or even refer to federal law." 340 F.3d at 1045.

Accordingly, because the complaint does not arise under federal law, this Court lacks jurisdiction under § 1441(a).[5]

## II. *Federal Officer Jurisdiction*

■ Grasso's claim that he may remove this case as a federal officer sued for actions taken under color of federal law under 28 U.S.C. § 1442(a)(1) is more plausible, but is also ultimately without merit.

---

4. While this contention seems a more-than-plausible elaboration of a corporate officer's fiduciary duty, the Court expresses no view on whether it correctly states New York law, still less on the accuracy of the AG's factual contentions, which are matters for the state court to resolve.

5. The AG also objects to removal under § 1441 on the ground that that statute requires the consent of all defendants to the removal, and the NYSE opposes removal. (P. Br. 6 n. 4.) Grasso counters that the NYSE is only a nominal defendant, whose interests are in fact aligned with those of the AG. (D.Br.31–35.) Since the Court lacks jurisdiction under § 1441 in any event, there is no need to address this more technical objection.

As noted above, removal under this statute requires that the defendant acted under the direction of a federal agency or officer, that he has a colorable federal defense, and that there is a causal nexus between the federal direction and the conduct in question. *In re MTBE*, 342 F.Supp.2d at 153–54. Grasso cannot satisfy this standard.

As a self-regulating organization under the securities laws, the NYSE and its officers often act as a de facto federal agency, or at least at the direction of the SEC. Such is the case, for example, when the NYSE acts to discipline member firms or to enact rules for the governance of the Exchange. These are regulatory powers delegated to the NYSE by the federal securities laws. It does not follow, however, that the NYSE and its officers act in this capacity at all times. The NYSE is a private body, incorporated under the laws of the State of New York as a private entity. Like any other private entity, it must organize itself in accordance with state corporation law, and engage in ordinary contractual relations with employees, vendors, and customers of the services it provides. Congress specifically determined that certain functions under the securities laws would be performed *not* by a federal governmental agency, all of whose acts would by definition be those of the federal government, but by private entities authorized to perform certain regulatory functions, which would remain for most purposes private, nongovernmental actors.

Presumably, one of the attributes of these private entities that Congress had in mind in creating this hybrid of private status and limited public responsibility was the ability to act without their every action being attributed, for jurisdictional and other purposes, to the federal government.

Thus, while the NYSE acts as or at the direction of a federal agency when performing its regulatory functions, it does not so act when it performs such ordinary functions as paying or otherwise contracting with its own employees.[6] For similar reasons, it cannot be held that there is a causal nexus between the federal mandates under which the NYSE acts, and its challenged actions with respect to Grasso's compensation. Grasso's argument that there is such a causal nexus rests upon misunderstandings of the AG's complaint of the same nature as those that defeat his arguments for federal question jurisdiction.

Of course, as Grasso concedes, no federal statutory or SEC directive dictates how much compensation should be paid to officers of the NYSE, or the procedures by which such compensation is to be set. To the contrary, federal law, for now, leaves the NYSE to organize its governance in accordance with state law. *See* 15 U.S.C. § 78c(a)(1) (defining "exchange" as "any organization, association or group of persons, whether incorporated or unincorporated").[7] In addition to citing the

---

**6.** The AG cites a large number of cases involving the employee relations of the NYSE that have been litigated in the state courts, including employment discrimination suits, workmen's compensation, and labor law issues. *See Conigliaro v. NYSE*, 2 A.D.3d 767, 769 N.Y.S.2d 412 (App.Div.2003); *Blum v. NYSE*, 298 A.D.2d 343, 751 N.Y.S.2d 202 (App.Div. 2002); *Piccinich v. NYSE*, 257 A.D.2d 438, 683 N.Y.S.2d 517 (App.Div.1999). Since no one apparently attempted to remove these

cases, they of course have no precedential value in delineating the scope of federal jurisdiction, but the AG is correct that cases of this sort exemplify the ordinary, non-governmental functioning of the NYSE, and that the resulting lawsuits presumably would not be subject to removal to federal court simply because the NYSE has certain federal regulatory functions.

**7.** In a letter dated November 12, 2004, Grasso directs the Court's attention to the SEC's

paragraphs discussed above relating to his alleged failure to investigate certain matters, Grasso argues that his appointment of conflicted members to the Compensation Committee, as alleged in the complaint, was indeed directed by federal law, because the Exchange Act requires that the Board of Directors of an exchange include "fair representation of its members in the selection of its directors and administration of its affairs." 15 U.S.C. § 78f(b)(3). (D. Br. 9–11.) Similarly, he contends that his alleged failure to disclose facts about his compensation to the Board implicates Exchange Rule 22(b), prohibiting officers and directors from participating in the consideration of matters in which they have an interest, which is subject to SEC enforcement. Therefore, he concludes, the acts for which he is sued have a nexus to federal directives, which in turn provide him with defenses of immunity and preemption to state-law claims. (Not. of Removal ¶¶ 19–22.)

But the complaint does not seek to hold Grasso or the NYSE liable for appointing officials of member firms to the Compensation Committee, or for failing to intervene in Board decisions. Rather, it seeks to hold him liable for receiving, and the NYSE for providing, unreasonable compensation. The AG does not argue that

the NYSE was not entitled to appoint to the Board and to the Compensation Committee anyone it wanted, consistent with the provisions of federal and state law, and with its own internal rules. The AG contends, however, that if it appoints conflicted members, that fact bears on the determination of whether the compensation voted by a committee and Board so constituted is entitled to the same deference it would otherwise receive, and thus to the ultimate question of whether that compensation was reasonable and commensurate with the services provided, as required by New York's Not–for–Profit Corporations Law. Similarly, the AG does not undertake to enforce Exchange Rule 22(b), still less to interfere in any way with the SEC's enforcement of that rule or oversight of the NYSE's compliance with it. What the AG seeks to establish is that Grasso's compensation was set based on misleading information, that compensation so set may be deemed unreasonable within the meaning of N.Y. Not–for–Profit Corp. Law § 202(a)(12), and that a fiduciary violates his duties by taking compensation thus established with knowledge that the Board acted on misleading information.

The actions that are challenged by the AG, then, are not ones that were directed by federal statute, cf. Hayden v. NYSE, 4

recently proposed rules that would assert increased federal control over certain aspects of the internal governance structure of self-regulatory organizations ("SROs"), such as the NYSE. If approved, these rules would require, inter alia, SRO boards to be composed entirely of independent directors, the establishment of fully independent nominating, compensation, regulatory oversight, and audit committees, and disclosure of compensation paid to certain employees, including the Chief Regulatory Officer. See SEC Release No. 34–50699 (Nov. 18, 2004), at http://www.sec.gov/rules/proposed/34–50699.htm (containing text of proposed rules). But these proposed rules, prompted as they may have been, in part, by the events which form

the core of this complaint, are of no actual relevance here. As discussed, plaintiff seeks enforcement of state corporate governance law, not these proposed standards, nor any other federal law or federally-defined duty. And defendants cannot claim that these rules, not yet in existence, and certainly not in existence at the time of the actions alleged in the instant complaint, somehow directed their behavior such that they provide a causal nexus sufficient to ground § 1442(a)(1) jurisdiction. At most these proposed rules suggest an inclination on the part of the SEC to exercise greater control in the future over what presently remains a matter of state corporate governance law.

F.Supp.2d 335, 338 (S.D.N.Y.1998) (broker's suit in federal court for injunctive and declaratory relief from Exchange Act-prescribed discipline proceedings brought against him by NYSE); *In re MTBE*, 342 F.Supp.2d at 155–57 (removal proper where defendants' actions giving rise to state law claims for groundwater contamination were allegedly required under the federal Clean Air Act), or for which federal law provides any immunity. *Sparta Surgical Corp.*, 159 F.3d at 1214 (immunity granted where exchange "act[ed] under the aegis of the Exchange Act's delegated authority" in disciplining member); *DL Capital Group LLC v. Nasdaq Stock Market Inc.*, No. 03 Civ. 9730(CSH), 2004 WL 993109, at *6 (S.D.N.Y. May 5, 2004) (immunity extends to exchange's decision to delay announcement of trade cancellations, which "[fell] squarely within the ambit of their duties and official capacities"). Nor is there any conflict between the duties and prohibitions the AG seeks to enforce and any federal regulatory interest. Permitting a state government to enforce the corporate governance norms under which an exchange or self-regulating organization is established violates no policy embodied in the federal securities laws.[8] Grasso thus fails to establish that his acceptance of compensation that is allegedly excessive and/or set by a Board that was

conflicted and misinformed either has a causal nexus to federal directives or is colorably protected by a federal defense.

Second Circuit case law fully supports this conclusion. In *D'Alessio v. NYSE*, 258 F.3d 93 (2d Cir.2001), the Court of Appeals upheld removal of a state-court action, and found that the NYSE was federally immune from a suit "predicated on the NYSE's improper performance of the regulatory functions delegated by the SEC to the NYSE pursuant to the Exchange Act." *Id.* at 104. The NYSE's actions in that case related directly to the interpretation and enforcement of federal securities regulations, including reporting alleged violations of such regulations by D'Alessio to the SEC and the United States Attorney. Similarly, in *Barbara v. NYSE*, 99 F.3d 49, 59 (2d Cir.1996), the Court found the NYSE immune for actions taken in disciplinary proceedings mandated by federal law. Neither of these cases remotely supports the exercise of federal jurisdiction, or a defense of immunity or preemption, where a state agency seeks to enforce state laws relating to the compensation of officers or employees of a self-regulating organization.[9]

Accordingly, Grasso's effort to remove the case under § 1442(a)(1) must also fail.

---

**8.** Indeed, for all of the length and erudition of Grasso's submission, nowhere in his brief is a clear theory set forth of how any statute or common-law principle relied on in the AG's complaint conflicts with or is preempted by federal regulation.

**9.** Grasping at straws, Grasso cites *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), a case involving prison officials, in which the Supreme Court found the required causal connection to federal authority simply because defendants showed "that their relationship to [plaintiff] derived solely from their official duties," thus permitting the officials to remove a case in

which plaintiffs alleged that they had been acting on a "frolic of their own" unrelated to those duties, so that the defendants could "present their version of the facts to a federal ... court." *Id.* at 409, 89 S.Ct. 1813. (D.Br.18.) But such a test, while appropriate to federal law enforcement agents, would make no sense in this context, and has never been so applied. The mere fact that Grasso was hired by an organization that is regulated in certain respects by the federal government, and exercises certain delegated federal powers, does not render every challenge to any of his or the NYSE's administrative or internal actions a matter of federal law or jurisdiction.

508

## CONCLUSION

In addressing the instant motion to remand, the Court has of necessity treated the allegations of the complaint as true. Of course, in assuming the truth of these allegations for purposes of determining the Court's jurisdiction, the Court intends no implication that the facts alleged can actually be established, and expresses no opinion about whether those facts, if true, warrant the relief requested under New York State law. That is a matter for the state courts to decide. The only issue before this Court is whether it has jurisdiction over this action. Because it does not, the motion to remand the case to the Supreme Court of New York, New York County, is granted.

SO ORDERED.