**In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

No. 1:00–1898, MDL 1358(SAS).

United States District Court, S.D. New York.

Oct. 19, 2004.

Kelly Ayotte, Maureen D. Smith, Office of the Attorney General, Environmental Protection Bureau, Concord, NH, for State of New Hampshire.

Jan Scully, Russ Detrick, Sacramento County Office of the District Attorney, Consumer & Environmental Protection Division, Sacramento, CA, for The People of the State of California.

Robert Gordon, C. Sanders McNew, Stanley N. Alpert, Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott Will & Emery, New York, NY, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

This multi-district litigation consists of dozens of cases, in which plaintiffs seek relief for contamination or threatened contamination of groundwater from defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE").[1] Plaintiffs include states, cities, municipalities, private water providers, and other entities.

Although the cases were filed in various state courts, defendants removed the actions to federal court, asserting four grounds of subject matter jurisdiction: (1) federal agent jurisdiction; (2) substantial federal question; (3) complete preemption; and (4) bankruptcy jurisdiction.[2]

Certain plaintiffs moved to remand. I denied the motions, holding that this Court has federal agent jurisdiction over some, and bankruptcy jurisdiction over all, of the MTBE cases pending before it.[3] I found that defendants had sufficiently averred facts supporting removal; specifically, they alleged that they added MTBE to gasoline at the direction of the EPA, a federal agency, to comply with the requirements of the Reformulated Gasoline ("RFG") Program and the Oxygenated Fuels Program.[4] This allegation sufficed to establish jurisdiction based on defendants having acted as federal agents. I further found defendants' allegations sufficient to establish federal agent jurisdiction with respect to certain non-covered areas because the federal government expected to turn some non-covered locations into RFG areas as a practical matter when it promulgated the RFG Program.[5] Finally, I held that the Court has bankruptcy jurisdiction because plaintiffs have alleged some actions by defendants that predate Texaco's (one of the defendants) plan of reorganiza-

---

1. Plaintiffs' fact allegations are not recited herein because they are not necessary for the determination of these motions. For a full background, the reader is referred to the Court's previous opinions in this multi-district litigation. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F.Supp.2d 593 (S.D.N.Y.2001) (*"MTBE I"*) (concerning preemptive effect of Clean Air Act); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y.2002) (*"MTBE II"*) (denying class certification); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 342 F.Supp.2d 147 (S.D.N.Y.2004) (*"MTBE III"*) (federal agent jurisdiction); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 341

F.Supp.2d 351 (S.D.N.Y.2004) (*"MTBE IV"*) (declining to abstain); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 341 F.Supp.2d 386 (S.D.N.Y.2004) (*"MTBE V"*) (bankruptcy jurisdiction).

2. *See, e.g.,* Notice of Removal ¶¶ 36–59 in *Patrick County Sch. Bd. v. Amerada Hess Corp.*, No. 04 Civ.2070(SAS).

3. *See MTBE III,* 342 F.Supp.2d 147; *MTBE V,* 341 F.Supp.2d 386.

4. *See MTBE III,* 342 F.Supp.2d at 159.

5. *See MTBE V,* 341 F.Supp.2d at 399–400.

tion, and questions concerning when claims arose and whether they were discharged involve the enforcement and construction of Texaco's discharge injunction.[6]

Notwithstanding the Court's federal question jurisdiction, plaintiffs State of New Hampshire ("New Hampshire") and The People of the State of California ("California") (collectively "State Plaintiffs") move to remand based on state sovereign immunity. I now consider whether principles of sovereign immunity are violated when a state plaintiff voluntarily prosecutes a claim and its case is removed from state to federal court without its consent.

## II. LEGAL STANDARD

Section 1447(c) of Title 28 provides that a case removed from state court shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." When a party files a motion to remand challenging the removal of an action from state court, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'"[7] "Out of respect for the independence of state courts, and in order to

control the federal docket, 'federal courts construe the removal statute narrowly, resolving any doubts against removability.'"[8] If the removing party cannot establish its right to removal by "competent proof," the removal was improper, and the district court must remand the case to the court in which it was filed.[9]

## III. DISCUSSION

State Plaintiffs argue that the Eleventh Amendment of the United States Constitution protects states from being involuntarily subjected to federal jurisdiction.[10] They argue that respecting their right to pursue these actions in state court is consistent with the "preeminent purpose" of state sovereign immunity, i.e., the dignitary interest of States, and the Supreme Court's expansive interpretation of the Eleventh Amendment.[11] New Hampshire asserts that the federal officer removal statute cannot trump sovereign immunity.[12] California contends that in Hans v. Louisiana,[13] the Supreme Court established a presumption against proceedings or suits that were "anomalous or unheard of" at the time the Constitution was adopted; since removing States to federal court without their consent was anomalous and

6. See id. at 412–14.

7. R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir.1979) (quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). See also Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); Carson v. Dunham, 121 U.S. 421, 425–26, 7 S.Ct. 1030, 30 L.Ed. 992 (1887).

8. Kings Choice Neckwear, Inc. v. DHL Airways, Inc., No. 02 Civ. 9580, 2003 WL 22283814, at *2 (S.D.N.Y. Oct. 2, 2003) (quoting Somlyo v. J. Lu–Rob Enters., Inc., 932 F.2d 1043, 1045–46 (2d Cir.1991)). See also Syngenta Corp Prot., Inc. v. Henson, 537 U.S. 28, 31, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002).

9. See, e.g., Kings Choice Neckwear, 2003 WL 22283814.

10. Memorandum of Law in Support of Plaintiff State of New Hampshire's Motion for Remand ("NH Mem.") at 4–8; Memorandum of Points and Authorities in Support of Motion to Remand Based on Sovereign Immunity Made by the Plaintiff People of the State of California ("CA Mem.") at 4–5.

11. See NH Mem. at 8–10; CA Mem. at 5–6.

12. See NH Mem. at 15–16.

13. 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

unheard of, defendants cannot establish their right to a federal forum, and the case must be remanded.[14] In addition, State Plaintiffs assert that cases upholding removal over the objections of sovereigns improperly rely on two inapposite Supreme Court opinions; improperly limit their analyses to the literal text of the Eleventh Amendment; and fail to discuss and apply the *Hans* presumption.[15]

Defendants counter that sovereign immunity does not bar removal where the removal is based on section 1442 of Title 28 because Congress created the federal officer removal statute in order to protect the supremacy of federal law and the sovereignty of the federal government against intrusion by the States. They argue that the Eleventh Amendment and sovereign immunity doctrines do not bar removal, but only prohibit lawsuits against the States, *i.e.*, the immunity only applies when a State is the defendant. Moreover, they contend that the *Hans* presumption does not bar removal because nothing in *Hans* or any other case insulates non-consenting States from court process. Finally, defendants assert that California cannot raise the defense of sovereign immunity because the lawsuit is brought by the Sacramento District Attorney, who does not represent the State of California.[16]

**14.** *See* CA Mem. at 6–9.

**15.** *See id.* at 9–13; NH Mem. at 11–15.

State Plaintiffs filed their briefs before I issued my opinion in *MTBE V* and therefore argued that the Court does not have federal agent jurisdiction. Because I have already decided that issue, I do not revisit it here.

**16.** *See* Defendants' Response to State Plaintiffs' Motion to Remand ("Def. Mem.") at 2–17; Defendants' Sur–Reply to Plaintiff People of the State of California's Motion to Remand ("Def. Sur–Rep.") at 1–3.

**17.** U.S. Const. amend. XI (emphasis added).

## A. Sovereign Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against* one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[17] Discussions of state sovereign immunity often begin and end here because the text of the Amendment seems clear. On its face, the Eleventh Amendment only prohibits suits *against* non-consenting States in federal court; it does not bar removal of cases in which the State is the *plaintiff.*

However, the Supreme Court has explained:

> The phrase ["Eleventh Amendment immunity"] is a convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the State's immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today....[18]

**18.** *Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). *Accord Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("The Court's recognition of sovereign immunity has not been limited to the suits described in the text of the Eleventh Amendment."); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (" '[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms.' ") (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)); *Principality of Monaco v. Missis-*

Therefore, State Plaintiffs' argument that sovereign immunity bars their involuntary removal cannot be dismissed out of hand.

## 1. Common Law Origin

The principle of sovereign immunity developed in England based on the feudal system.[19] A lord could not be sued by a vassal in his own court, but each lord could be sued in the court of a higher lord.[20] Since the king reigned at the top of the system, he was not subject to suit in any court " '[f]or all jurisdiction implie[d] superiority of power....' "[21] "Only the sovereign's own consent could qualify the absolute character of that immunity."[22]

Sovereign immunity was also premised on the notion that the king could do no wrong.[23] In adhering to this fiction, courts distinguished between the king and his agents in order to provide relief for the sovereign's transgressions.[24] The courts permitted suits against the king's officers on the theory that the king would never have authorized unlawful conduct, and therefore his agent's unlawful acts should not be treated as the acts of the sovereign.[25] As Justice Stevens explains:

The rationale for this principle was compelling. Courts did not wish to confront the king's immunity from suit directly; nevertheless they found the threat to liberty posed by permitting the sovereign's abuses to go unremedied to be intolerable. Since in reality the king could act only through his officers, the rule which permitted suits against those officers formally preserved the sovereign's immunity while operating as one of the means by which courts curbed the abuses of the monarch.[26]

Thus, sovereign immunity historically meant a prohibition against suit in one's own court. Though the immunity was seemingly absolute, some judicial proceedings did not offend the crown.[27]

## 2. Federalism and the Constitutional Structure

The framers of the Constitution rejected " 'the concept of a central government that would act upon and through the States' in favor of 'a system in which the State and Federal Governments would exercise concurrent authority over the people....' "[28] The Constitution therefore altered some

*sippi*, 292 U.S. 313, 322, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) ("Manifestly, we cannot ... assume that the letter of the Eleventh Amendment exhausts the restrictions upon suits against nonconsenting States. Behind the words of the constitutional provisions are postulates which limit and control.").

**19.** *See Nevada v. Hall*, 440 U.S. 410, 414, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

**20.** *See id.* at 415, 99 S.Ct. 1182.

**21.** *Alden*, 527 U.S. at 715, 119 S.Ct. 2240 (quoting 1 W. Blackstone, Commentaries on the Laws of England 234–35 (1765)).

**22.** *Hall*, 440 U.S. at 414, 99 S.Ct. 1182. *Accord Chisholm v. Georgia*, 2 U.S. 419, 445, 2 Dall. 419, 1 L.Ed. 440 (1793) (Iredell, J.) ("[I]t appears, that in England even in case of a private debt contracted by the King, in his own person, there is no remedy but by petition, which must receive his express sanction,

otherwise there can be no proceeding upon it.").

**23.** *See Hall*, 440 U.S. at 415 n. 7, 99 S.Ct. 1182.

**24.** *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 142, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Stevens, J., dissenting) (citing 1 Blackstone, Commentaries at 244).

**25.** *See id.*

**26.** *Id.* at 143 n. 21, 104 S.Ct. 900 (citing III W. Holdsworth, A History of English Law 262–68 (1903)).

**27.** *See Chisholm*, 2 U.S. at 430.

**28.** *Alden*, 527 U.S. at 714, 119 S.Ct. 2240 (quoting *Printz v. United States*, 521 U.S. 898, 919–20, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997)).

common law principles to balance the supremacy of federal law with the independent sovereignty of States.[29]

At the time this nation was founded, the States were sovereign, and "[t]he suability of a state, without its consent, was a thing unknown to the law."[30] Under the common law, however, a sovereign was *not* immune from suit in another sovereign's court, and to the extent he was not suable, his immunity "must [have been] found either in an agreement, express or implied, between the two sovereigns, or in the voluntary decision of the second to respect the dignity of the first as a matter of comity."[31] Although States would retain immunity in their own courts under the federal system, they feared that federal jurisdiction would subject them to raids on their state treasuries.[32] Many of the States were heavily indebted as a result of the Revolutionary War,[33] and they insisted on protection from being sued in federal court as a condition of participating in the constitutional design. The framers assured the people that sovereign immunity would be preserved in the new government, and the Constitution was adopted with that understanding.[34] The federal system could not have been established without the agreement that the States could not be sued by private citizens in federal court.[35] As it evolved in the United States then, the doctrine of sovereign immunity encompasses two different concepts—"one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign."[36] Under the constitutional bargain, States would be immune from suit in federal court just as they were immune from suit in their own courts.

---

**29.** *See id.* at 733, 119 S.Ct. 2240 ("Although the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design.").

**30.** *Hans,* 134 U.S. at 16, 10 S.Ct. 504 ("This has been so often laid down and acknowledged by courts and jurists that it is hardly necessary to be formally asserted.").

**31.** *Hall,* 440 U.S. at 416, 99 S.Ct. 1182.

**32.** *See Alden,* 527 U.S. at 720, 119 S.Ct. 2240.

**33.** *See Hall,* 440 U.S. at 418, 99 S.Ct. 1182.

**34.** *See* The Federalist No. 81 (Alexander Hamilton) ("Unless . . . there is a surrender of this [sovereign] immunity in the plan of the convention, it will remain with the States. . . . There is no color to pretend that the State governments would, by the adoption of that plan, be divested of the privilege of paying their own debts in their own way. . . ."); 3 Debates on the Federal Constitution 555–56 (J. Elliot 2d ed. 1854) (John Marshall) ("With respect to disputes between *a state and the citizens of another state,* its jurisdiction has been decried with unusual vehemence. I hope no gentleman will think that a state will be called at the bar of the federal court. . . . It is not rational to suppose that the sovereign power should be dragged before a court.") (emphasis in original). *See also Alden,* 527 U.S. at 718, 119 S.Ct. 2240 ("Although the state conventions which addressed the issue of sovereign immunity in their formal ratification documents sought to clarify the point by constitutional amendment, they made clear that they, like Hamilton, Madison, and Marshall, understood the Constitution as drafted to preserve the States' immunity from private suits.").

**35.** *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 n.2, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("The Constitution never would have been ratified if the States and their courts were to be stripped of their sovereign authority except as expressly provided by the Constitution itself.").

**36.** *Hall,* 440 U.S. at 414, 99 S.Ct. 1182. *See also Monaco,* 292 U.S. at 330, 54 S.Ct. 745 (Mississippi immune from suit by foreign country in federal court because the states had not agreed to waiver of sovereign immunity with regard to foreign countries as part of the constitutional plan).

### 3. The Eleventh Amendment and Sovereign Immunity Jurisprudence

Shortly after the Constitution's adoption, the Supreme Court was tasked with determining whether a private citizen could bring a suit against the State of Georgia in federal court.[37] Article III of the Constitution provides, in relevant part: "The judicial Power shall extend to ... Controversies between a State and Citizens of another State; [and between] ... a State ... and foreign States, Citizens or Subjects."[38] Based on a literal reading of Article III's jurisdictional grant, the Court determined that Georgia could be sued in federal court.[39] The decision sent a "shock of surprise throughout the country" because people had assumed that the States' traditional immunity had been preserved.[40] The Eleventh Amendment was proposed and adopted in order to overrule the Court's misinterpretation.[41] The Amendment was drafted narrowly because it was not meant to redefine federal jurisdiction,[42] but rather, to confirm two suppositions: (1) that each State is a sovereign entity in our federal system; and (2) it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.[43] "[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."[44]

The Supreme Court has repeatedly declared that the Eleventh Amendment provides a defense against federal jurisdiction when a State is being sued.[45] In keeping with common law tradition and constitu-

---

**37.** See *Chisholm*, 2 U.S. 419.

**38.** U.S. Const. art. III. Article III vests the federal judiciary with jurisdiction over nine separate but overlapping categories of cases. The first three encompass all federal question and admiralty cases, while the last six are defined by the parties' status.

**39.** See *Chisholm*, 2 U.S. 419.

**40.** See *Hans*, 134 U.S. at 11, 10 S.Ct. 504.

**41.** See *id.* ("This amendment, expressing the will of the ultimate sovereignty of the whole country, superior to all legislatures and all courts, actually reversed the decision of the supreme court.").

**42.** See *Alden*, 527 U.S. at 723, 119 S.Ct. 2240 ("Congress chose not to enact language codifying the traditional understanding of sovereign immunity but rather to address the specific provisions of the Constitution that had raised concerns during the ratification debates and formed the basis of the *Chisholm* decision."); *Seminole Tribe*, 517 U.S. at 64, 116 S.Ct. 1114 ("It was well established ... that the Eleventh Amendment stood for the constitutional principle that state sovereign immunity limited the federal courts' jurisdiction under Article III."); *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d

605 (1993) ("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity."). *See generally* Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425 (1987) (discussing development of the Eleventh Amendment).

**43.** See *Seminole Tribe*, 517 U.S. at 54, 116 S.Ct. 1114.

**44.** *Pennhurst*, 465 U.S. at 101 n. 11, 104 S.Ct. 900 (quotation marks and citations omitted).

**45.** See *Alden*, 527 U.S. at 748, 119 S.Ct. 2240 (a state may raise "a constitutional defense of sovereign immunity in federal court"); *Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (noting that the Eleventh Amendment does not automatically destroy original jurisdiction, but rather "grants the State a legal power to assert a sovereign immunity defense should it choose to do so"); *Coeur d'Alene Tribe*, 521 U.S. at 267, 117 S.Ct. 2028 ("The Amendment ... enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."); *Hall*, 440 U.S. at 417, 99 S.Ct. 1182 (referring to "Nevada's claim of immunity from suit" as an "immunity defense"); *see also Thomas v. FAG Bearings Corp.*, 50

tional design, however, the Court has also looked beyond the Amendment's language to determine the scope of a State's protection. It has found sovereign immunity to apply to cases involving citizens suing their own States,[46] federal corporations,[47] foreign nations,[48] and Indian tribes,[49] and as a defense to suits in admiralty[50] and claims for administrative adjudication[51]—even though the Amendment's text does not extend so far.

 There are some limits on sovereign immunity, however. Sovereign immunity may be waived by the State[52] or in certain circumstances, be abrogated by Congress.[53] The immunity is limited by the enforcement provisions of Section 5 of the Fourteenth Amendment,[54] and by the doctrine of *Ex parte Young*.[55] Under *Ex parte Young*, private parties are permitted to sue a State for injunctive relief for

constitutional violations committed by its officers by suing a state official.[56]

Having reviewed the historical origins, constitutional structure, and jurisprudence of sovereign immunity, it is apparent that state sovereign immunity, as embodied by the Eleventh Amendment, bars a suit against a State in federal court without its consent. I now turn to the relationship between state sovereign immunity and removal.

## B. Removal

### 1. Case Law

 With few exceptions, courts that have addressed the intersection of sovereign immunity and removal have held that the doctrine does not prohibit the removal of State-initiated actions to federal court without the State's consent.[57]

---

F.3d 502, 506 (8th Cir.1995) ("[F]ederal courts cannot simply deem a state's Eleventh Amendment defense inapplicable.").

Courts have sometimes referred to sovereign immunity as a jurisdictional limitation. *See, e.g., In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir.2004); *California v. Steelcase*, 792 F.Supp. 84, 86 (C.D.Cal.1992). However, this does not mean that federal courts lack subject matter jurisdiction *ab initio*. It is fundamental that parties cannot waive lack of federal subject matter jurisdiction. Clearly states may waive their sovereign immunity and voluntarily avail themselves of the federal courts. *See, e.g., Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (refusing to recognize sovereign immunity because state defendant had removed the action to federal court).

**46.** *See Hans*, 134 U.S. at 14–15, 10 S.Ct. 504.

**47.** *See Smith v. Reeves*, 178 U.S. 436, 449, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).

**48.** *See Monaco*, 292 U.S. at 330, 54 S.Ct. 745.

**49.** *See Blatchford*, 501 U.S. at 782, 111 S.Ct. 2578.

**50.** *See In re New York*, 256 U.S. 490, 498, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

**51.** *See Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 760, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002).

**52.** *See Alden*, 527 U.S. at 755, 119 S.Ct. 2240.

**53.** *See Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114 (Congress may abrogate state sovereign immunity if it unequivocally expresses its intent to do so, and acts pursuant to a valid exercise of power).

**54.** *See Atascadero*, 473 U.S. at 238, 105 S.Ct. 3142.

**55.** 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

**56.** *See id.* at 160, 28 S.Ct. 441; *see also Edelman v. Jordan*, 415 U.S. 651, 669, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (prohibiting retroactive relief under *Young*). Of course, the result of this fiction is that the acts of government officials can constitute state action for purposes of the Fourteenth Amendment, but not for the purpose of overcoming Eleventh Amendment immunity.

**57.** *See Oklahoma ex rel. Edmondson v. Magnolia Marine Transport Co.*, 359 F.3d 1237, 1238

State Plaintiffs posit that the majority of district courts have misconstrued the Eleventh Amendment and urge this Court to follow the reasoning of *California v. Steelcase Inc.*,[58] and *Moore v. Abbott Laboratories, Inc.*[59] instead. In *Steelcase*, the People of the State of California filed a civil enforcement action, alleging violations of the California antitrust and unfair competition statutes. The defendant removed the action to federal court based on diversity jurisdiction, and the court *sua sponte* remanded the action. The *Steelcase* court held that even if there was diversity of citizenship among the parties, the court lacked jurisdiction because the Eleventh Amendment barred removal without the State's consent. The court reasoned that the Eleventh Amendment "is an immunity from being made an involuntary party to an action in federal court, [and] should [therefore] apply equally to the case where the state is a plaintiff in an action commenced in state court and the action is removed to federal court by the defendant."[60] Similarly, in *Moore*, the State of Mississippi brought an action against manufacturers of infant formula for violations of the Mississippi antitrust statutes. In holding that the proscriptions of the Eleventh Amendment applied to the State as plaintiff, the *Moore* court explicitly relied on the reasoning of *Steelcase*.[61]

(10th Cir.2004) (holding that "the State's Eleventh Amendment immunity did not bar removal"); *California ex rel. Lockyer v. Dynegy*, 375 F.3d 831, 848 (9th Cir.2004) ("[A] state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction."); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 21031974, at *2 (S.D.N.Y. May 5, 2003) ("[T]he doctrine of sovereign immunity is inapplicable to a state when it acts as a plaintiff."); *South Dakota v. Burlington N. & Santa Fe Ry. Co.*, 280 F.Supp.2d 919, 935 (D.S.D.2003) ("It is well settled that the Eleventh Amendment applies only to suits 'commenced or prosecuted against' the State and does not bar removal where the State is a plaintiff."); *Missouri v. Prudential Health Care Plan, Inc.*, No. 4:00CV8, 2000 WL 33952258, at *3 (E.D.Mo. Apr. 13, 2000) ("Courts have held that where a federal question is presented, the Eleventh Amendment does not bar removal of an action in which the state is the plaintiff."); *Regents of the Univ. of Minn. v. Glaxo Wellcome, Inc.*, 58 F.Supp.2d 1036, 1039 (D.Minn.1999) ("[T]he Eleventh Amendment does not bar removal of this action to federal court."); *California v. Acme Fill Corp.*, No. C–97–1983, 1997 WL 685254, at *2 (N.D.Cal. Oct. 16, 1997) ("As a plaintiff, [California] cannot now assert immunity from suit under the Eleventh Amendment."); *Missouri v. Coeur D'Alene Tribe*, No. 97–0914–CV–W–6, 1997 WL 603834, at *3 (W.D.Mo. Sept. 29, 1997) ("Where a federal question is presented, ... the Eleventh Amendment does not bar removal of an action in which a state is the plaintiff."); *Vermont v. Oncor Communications, Inc.*, 166 F.R.D. 313, 321 (D.Vt.1996) ("It has long been the case that suits brought by a state against parties who are not other states may 'be brought in or removed to the [District Courts] ...' ") (quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 101, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, No. 89–1983, 1989 WL 140217, at *1 (E.D.La. Nov. 9, 1989) (Eleventh Amendment inapplicable to removal of a suit filed by a state as a plaintiff); *Banco y Agencia de Financiamiento v. Urbanizadora Villalba*, 681 F.Supp. 981, 982–83 (D.P.R. 1988) (holding that Eleventh Amendment does not bar removal). *But see Moore v. Abbott Labs., Inc.*, 900 F.Supp. 26, 30 (S.D.Miss.1995) (finding that the court lacked federal subject matter jurisdiction because Mississippi did not consent to removal); *Steelcase*, 792 F.Supp. at 86 (Eleventh Amendment applies to case where the state is a plaintiff and the state's case is removed to federal court); *cf. Thomas*, 50 F.3d at 507 (Eleventh Amendment prohibits coercive joinder of State even though State would be realigned as a plaintiff).

58. 792 F.Supp. 84.

59. 900 F.Supp. 26.

60. 792 F.Supp. at 86.

61. 900 F.Supp. at 30.

*Steelcase* and *Moore* are unpersuasive, however, because they rest on the false premise that sovereign immunity prevents a State from being made an involuntary party to an action in federal court. The opinions cite no authority for this proposition, nor do they engage in anything more than a cursory examination of the Eleventh Amendment. As previously discussed, state sovereign immunity only applies to States as *defendants*, not plaintiffs.

### 2. The *Hans* Presumption Does Not Bar Removal of These Actions

California asserts that federal jurisdiction over State Plaintiffs who have been involuntarily removed would run afoul of the *Hans* presumption.[62] But *Hans* does not stand for the broad proposition urged by California that federal courts lack jurisdiction if the suit was "anomalous or unheard of" at the time the Constitution was adopted. Rather, it reaffirms the general principle of States' immunity from suit by holding that the Eleventh Amendment extends to actions brought against a State by its own citizens.[63] The *Hans* presumption functioned to preclude those claims against which a state historically had a sovereign immunity defense.[64]

Furthermore, California's argument weighs against remand because it would have been anomalous or unheard of for state courts to exercise jurisdiction over federal questions.

The jurisdiction over [cases arising under the constitution, laws, and treaties of the United States] could not exist in the state courts prior to the adoption of the constitution, and it could not afterwards be directly conferred on them; for the constitution expressly requires the judicial power to be vested in courts ordained and established by the United States.[65]

Even the lower federal courts did not have federal question jurisdiction until the Judiciary Act of 1875 gave them original jurisdiction over "all suits . . . arising under the Constitution or laws of the United States."[66]

### 3. Removal of Cases Brought by State Plaintiffs is Consistent with Principles of Federalism

On the other hand, the removal of cases to federal court that were initially brought in state court was not novel to the founders. The Constitution presumed local prejudice and therefore provided for diversity jurisdiction.[67] However, access to federal courts would be meaningless if plaintiffs could avoid the federal forum by simply filing their cases in state court.[68] The Judiciary Act of 1789 therefore permitted removal by defendants,[69] and the right "was exercised almost contemporaneously with the adoption of the Constitution . . . ."[70]

---

**62.** CA Mem. at 9.

**63.** *See* 134 U.S. at 19, 10 S.Ct. 504.

**64.** *See id.* at 12, 10 S.Ct. 504 ("Any such power such as that of authorizing the federal judiciary to entertain suits by individuals against the states had been expressly disclaimed, and even resented, by the great defenders of the constitution while it was on its trial before the American people.").

**65.** *Martin v. Hunter's Lessee*, 1 Wheat. 304, 14 U.S. 304, 335, 4 L.Ed. 97 (1816).

**66.** Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470, 470.

**67.** *See Hunter's Lessee*, 14 U.S. at 347.

**68.** *See id.* at 348–49.

**69.** *See Gordon v. Longest*, 41 U.S. 97, 103, 16 Pet. 97, 10 L.Ed. 900 (1842).

**70.** *Tennessee v. Davis*, 100 U.S. 257, 265, 25 L.Ed. 648 (1879).

The Civil War was followed by an increase in federal authority and a curtailment of state power. Congress expanded the original and removal jurisdiction of the federal courts in order to protect federal officers and former slaves.[71] In *Tennessee v. Davis*,[72] the Supreme Court upheld removal by a federal officer in a state criminal proceeding because "such jurisdiction is necessary for the preservation of the acknowledged powers of the [federal] government."[73] The Court rejected the argument that removal invaded state sovereignty because the States are not sovereign in all respects:

[W]hen the Constitution was adopted, a portion of that judicial power became vested in the new government created, and so far as thus vested it was withdrawn from the sovereignty of the State. Now the execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the State is restricted. The removal of cases arising under those laws ... is, therefore, no invasion of State domain. On the contrary, a denial of the right of the general government to remove them ... is a denial of the

conceded sovereignty of that government over a subject expressly committed to it.[74]

Removal of cases in which the State is the plaintiff is consistent with the constitutional sovereignty of States because there is no real affront to allowing them to proceed in federal court.[75] If and when their cases are finally tried, the federal courts will apply state law, thereby respecting and enforcing state policies, while simultaneously resolving federal questions. In that sense, federal and state interests are aligned. By contrast, national and local policies could be antagonistic where the State is a defendant in federal court. When the State is a defendant, it may have a greater interest in having its case litigated in its own courts because a judgment could impact the state treasury or public administration. Removal would offend principles of federalism in that situation.

Although State Plaintiffs may be inconvenienced by proceeding in this Court, sovereign immunity is not based on convenience—but a balance of federal and state power. Remanding the cases would improperly shift the balance towards the States because it would permit them to achieve unfair tactical advantages at the expense of the people.[76]

---

71. *See generally*, Felix Frankfurter & James M. Landis, The Business of the Supreme Court: A Study in the Federal Judicial System 56–69 (1928) (discussing judicial developments during the Reconstruction era); Michael G. Collins, *The Unhappy History of Federal Question Removal*, 71 Iowa L. Rev. 717, 727 (1986) ("[M]any commentators now believe that the federal question provisions were added to removal legislation, not only to provide a congenial forum to enforce and give meaning to newly enacted federal legislation and the Civil War Amendments, but also to insure a federal haven at the trial level for burgeoning industrial, financial, and other 'entrepreneurial' interests.").

72. 100 U.S. 257, 25 L.Ed. 648.

73. *Id.* at 265–66.

74. *Id.* at 267.

75. *Cf. Coeur d'Alene Tribe*, 521 U.S. at 277, 117 S.Ct. 2028 ("The course of our case law indicates the wisdom and necessity of considering, when determining the applicability of the Eleventh Amendment, the real affront to a State of allowing a suit to proceed.").

76. *See Lapides*, 535 U.S. at 620, 122 S.Ct. 1640 ("[A]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages.").

The constitution of the United States was designed for the benefit of all the people of the United States.... It was not to be exercised exclusively for the benefit of parties who might be plaintiffs, and would elect the national forum, but also for the protection of defendants who might be entitled to try their rights, or assert their privileges, before the same forum.[77]

Accordingly, the removal of cases filed by State Plaintiffs does not violate principles of sovereign immunity.[78]

## IV. CONCLUSION

For the foregoing reasons, State Plaintiffs' motions to remand are denied. The Clerk of the Court is directed to close these motions.

SO ORDERED:

---

**77.** *Hunter's Lessee,* 14 U.S. at 348.

**78.** Because I hold that sovereign immunity only applies to States as defendants, I do not address defendants' argument that the Sacramento District Attorney does not represent the People of the State of California.