## In re METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION.

### MDL No. 1358(SAS).

United States District Court, S.D. New York.

Nov. 20, 2007.

Robin Greenwald, Robert Gordon, Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.

Jan Scully, Albert C. Locher, Office of the District Attorney, Sacramento County, Sacramento, CA, for Plaintiff People of California.

Victor M. Sher, Richard M. Franco, Sher Leff LLP, San Francisco, CA, for City of Sacramento, Sacramento County Water Agency, Sacramento Groundwater Authority, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, Sacramento Suburban Water District, San Juan Water District, and California–American Water Company.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott Will & Emery LLP, New York, NY, for Defendants.

Richard E. Wallace, Jr., Peter C. Condron, Steven C. Dubuc, Wallace King Domike &

Reiskin, PLLC, Washington, D.C., for Defendants Chevron U.S.A. Inc., Equilon Enterprises LLC, d/b/a Shell Oil Products US, Shell Oil Company, Shell Oil Products Company, LLC, and TMR Company (f/k/a Texaco Refining and Marketing Inc.).

Matthew T. Heartney, Arnold & Porter LLP, Los Angeles, CA, for Defendants BP Products North America Inc., BP West Coast Products LLC, and Atlantic Richfield Company.

Jon D. Anderson, Latham & Watkins LLP, Costa Mesa, CA, for Defendant ConocoPhillips Company.

M. Coy Connelly, Bracewell & Giuliani LLP, Houston, TX, for Defendants Ultramar, Inc., Valero Energy Corporation, Valero Marketing and Supply Company, and Valero Refining Company–California.

### OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION

Four years ago, the District Attorney for Sacramento County brought an action on behalf of the People of the State of California ("California") against various oil companies for their use and handling of methyl tertiary butyl ether ("MTBE"). Defendants removed the action from state to federal court, and it was transferred to this Court as part of a large multi-district litigation ("MDL") involving MTBE. California filed a motion to remand on the ground that removal of its action violated sovereign immunity, which this Court denied.[1]

California appealed to the United States Court of Appeals for the Second Circuit. On May 24, 2007, the Second Circuit held that "if the criteria of a valid removal statute are met, sovereign immunity does not bar the removal of a case commenced by a state in its own courts."[2] However, the Second Circuit also held that California's action had not been properly removed under the bankruptcy removal statute—an issue that had not been previously addressed because California had not raised it in its motion to remand to this Court.[3] In addition, the Second Circuit held that California's action had not been properly removed under the federal officer removal statute.[4] Thus, the Second Circuit directed this Court to return the action filed by California to the court from which it was removed.

The Second Amend Complaint ("Complaint") filed by California also includes claims brought by eleven plaintiffs who did not file an appeal to the Second Circuit ("non-State plaintiffs"). The claims brought by California and those claims brought by the non-State plaintiffs are different with one minor exception involving a claim of public nuisance. In addition, if the eleven non-State plaintiffs prove their claims, they will be awarded compensatory and, potentially, punitive damages for the harm done to their property. These remedies cannot be awarded to California based on the allegations in the Complaint.

Certain defendants now move to sever the claims of these non-State plaintiffs prior to remanding the action pursuant to Rule 21 of the Federal Rules of Civil Procedure.[5] For the reasons that follow, defendants' motion for severance is granted.

## II. BACKGROUND

The Complaint has twelve plaintiffs including California, the City of Sacramento, nine

1. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 361 F.Supp.2d 137, 148 (S.D.N.Y.2004).

2. *In re MTBE*, 488 F.3d 112, 136 (2d Cir.2007).

3. *See id.* at 132–34.

4. *See id.* at 124–32. The Second Circuit also rejected defendants' argument that the action could be removed because it was completely preempted by federal law or because it presented a substantial federal question. *See id.* at 134–36.

5. Fifty-five defendants are named in this action. The following nineteen defendants joined in this motion: Chevron Texaco Corporation, Chevron U.S.A. Inc., Citgo Petroleum Corporation, Citgo Refining and Chemical Company, LP, Equilon Enterprises, LLC, Equilon Enterprises, LLC, dba Shell Oil Products U.S., Shell Oil Company, Shell Oil Products Company, Shell Oil Products Company, LLC, and TMR Company (f/k/a Texaco Refining and Marketing Inc.), BP Products North America Inc., BP West Coast Products LLC, Atlantic Richfield Company, ConocoPhillips Company, Ultramar, Inc., Valero Energy Corporation, Valero Marketing and Supply Company, and Valero Refining Company–California.

water agencies, and a private utility company.[6] While "the People of The State of California, Plaintiff City of Sacramento, Water Agency Plaintiffs, and Investor–Owned Utility Plaintiff [are] collectively referred to as 'Plaintiffs,'"[7] California and the non-State plaintiffs have brought different claims against the defendants and seek substantially different forms of relief.

## A. The Claims of California and the Non–State Plaintiffs are Substantially Different

Seven of the claims have been brought *only* by California, all of which involve violations of various state regulatory laws.[8] These claims include:

1. strict liability for the disposal of hazardous waste in violation of Chapter 6.5 of Division 20 of the Health & Safety Code and the California Code of Regulations;

2. the negligent disposal of hazardous waste in violation of Chapter 6.5 of Division 20 of the Health & Safety Code and the California Code of Regulations;

3. the unlawful deposit of petroleum product into the waters of the state in violation of California Fish & Game Code § 5650a(1);

4. the making of misleading statements in violation of California Business and Professional Code § 17500;

5. the making of misleading environmental marketing claims in violation of California Business and Professional Code § 17536;

6. the committing of unlawful, unfair or fraudulent business practices in violation of California Business and Professional Code § 17200 and Water Code § 13260(a)(1); and

7. civil conspiracy by the defendants to commit the above violations.

Eight of the claims are brought *only* by non-State plaintiffs.[9] These claims include:

1. strict liability for design defect;

2. strict liability for failure to warn;

3. negligence;

4. trespass;

5. interference with property owned by a utility;

6. recovery of costs associated with MTBE remediation or treatment costs under California Health & Safety Code § 116366;

7. recovery of costs associated with MTBE under California Water Code § 13285;

8. recovery of the costs for the discharge of waste into the waters of California in violation of any waste discharge requirement or other order or prohibition under California Water Code § 13304.

■ All of the plaintiffs allege one "claim" of declaratory relief.[10] However, declaratory relief is not a claim but only a remedy that Congress has created so that the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[11] Indeed, the statute that provides for declaratory relief is entitled, "Creation of remedy."[12] The claim, or the "legal theory under which relief is sought,"[13] must

---

6. *See* Second Amended Complaint ("Compl.") ¶¶ 6–31 (describing the plaintiffs). The water agencies include (1) Sacramento County Water Agency, (2) Sacramento Groundwater Authority, (3) Citrus Heights Water District, (4) Del Paso Manor Water District, (5) Fair Oaks Water District, (6) Florin Resource Conservation District, (7) Rio Linda Elverta Community Water District, (8) Sacramento Suburban Water District, (9) San Juan Water District. The private corporation is the California–American Water Company.

7. *Id.* ¶ 34.

8. *See id.* ¶¶ 151–193.

9. *See id.* ¶¶ 194–255. The claim brought under California Water Code § 13304 is brought only by the City of Sacramento and the water agencies.

10. *See id.* ¶¶ 139–150.

11. 28 U.S.C. § 2201.

12. *Id.*

13. *In re MTBE,* 517 F.Supp.2d 662, 663–65 (S.D.N.Y.2007) (quotation marks and citation omitted); *see also id.* at 665–66 (emphasis added)

be based on other laws that the defendant allegedly violated in order to receive this relief. This is why "[a] single claim may support *multiple types of relief, including declaratory judgments,* injunctions, compensatory damages, and punitive damages." [14]

Thus, the only claim brought by all of the plaintiffs is for public nuisance.[15] However, as explained below, California and the non-State plaintiffs seek different remedies for the public nuisance and have suffered substantially different harms as a result of defendants' allegedly unlawful conduct.

## B. The Relief Sought by California and the Non–State Plaintiffs Is Substantially Different

California primarily seeks civil penalties or fines against the defendants under California's Health and Safety Code.[16] California requests, *inter alia,* the following forms of relief on its claims:

a. Pursuant to Code Civ. Pro. § 731, Defendants be ordered to abate the public nuisance created by their contamination of the soil, groundwater, and wells of Sacramento County. The abatement must be performed to conform with applicable law and under the supervision of all appropriate regulatory authorities.

b. Pursuant to Health & Saf.Code § 25189.2(c), Defendants herein, and each of them, be assessed TWENTY FIVE THOUSAND DOLLARS ($25,000) per each violation, per day, as alleged in the third cause of action.

c. In the alternative, pursuant to Health & Saf.Code § 25189(d), Defendants herein, and each of them, be assessed TWENTY–FIVE THOUSAND DOLLARS ($25,000) per each violation, per day, as alleged in the fourth cause of action.

d. Pursuant to Fish & Game Code § 5650.1, Defendants herein, and each of them, be assessed TWENTY–FIVE THOUSAND DOLLARS ($25,000) per each violation as alleged in the fifth cause of action.

e. Pursuant to Bus. & Prof.Code § 17500, Defendants herein, and each of them, be assessed TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) per each violation as alleged in the sixth cause of action.

f. Pursuant to Bus. & Prof.Code § 17536, Defendants herein, and each of them, be assessed TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) per each violation as alleged in the seventh cause of action.

g. Pursuant to Bus. & Prof.Code §§ 17200 *et seq.,* Defendants herein, and each of them, be assessed TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) per each separate violation as alleged in the eighth cause of action.

h. Pursuant to Bus. & Prof.Code § 17203, the Court order Defendants to notify all purchasers of the Products of the pendency of the claims set forth in this action for purposes of providing restitution for such purchasers.... [17]

In contrast, the City of Sacramento, water agencies, and the private utility company seek compensatory and punitive damages for the harm done to their property.[18]

The difference in the remedies sought by California and the non-State plaintiffs is demonstrated even with respect to the public nuisance claim—the one claim purportedly shared by all of the plaintiffs. The Complaint states: "The Plaintiffs are entitled to an order requiring Defendants to abate the public nuisance by performing all acts necessary to do so." [19] However, when alleging the harm suffered because of the public nuisance, the Complaint focuses *only* on the non-State plaintiffs:

133. The public nuisance caused, contributed to, maintained, assisted and/or participated in by Defendants, and each of them, has caused and continues to cause substantial and special injury to the *Plaintiff City of Sacramento, Water Agency Plaintiffs, and Investor–Owned Utility Plaintiff,* and each of them. Plaintiffs, and each of them,

---

14. *Id.* at 662–65 (emphasis added).

15. *See* Compl. ¶¶ 128–138.

16. *See id.* at 51–57.

17. *Id.* at 53.

18. *See id.* at 54.

19. Compl. ¶ 132.

have significant property and/or other interests, including but not limited to their rights to appropriate, use, protect, conserve and/or manage the groundwaters of the County, including their water supplies. The public nuisance caused, contributed to, maintained, assisted and/or participated in by Defendants, and each of them, damages the ability of the *Plaintiff City of Sacramento, Water Agency Plaintiffs, and Investor–Owned Utility Plaintiff* to maintain and/or purvey a water supply free from unacceptable health risk, taste, odor, pollution and contamination. These Plaintiffs' injuries are separate and distinct from that of the public.

134. In particular, as a direct and proximate result of Defendants' acts and omissions as alleged herein, the *Plaintiff City of Sacramento, Water Agency Plaintiffs, and Investor–Owned Utility Plaintiff,* and each of them, have incurred, are incurring, and will continue to incur, investigation, assessment, remediation, cleanup, restoration, removal, treatment and monitoring costs and expenses related to contamination of the groundwaters of the County, including their drinking water supplies, with MTBE and/or TBA, in an amount to be proved at trial.[20]

Unlike the non-State plaintiffs, California does not seek any compensatory or punitive damages with respect to the public nuisance claim nor does it allege that any of its property interests were harmed.[21]

---

20. *Id.* ¶¶ 133–134 (emphasis added).

21. Indeed, because California does not allege that any of its property rights have been harmed by defendants in the creation of a public nuisance, this claim may be dismissed by the state court. On the one hand, "an act or condition may constitute a public nuisance even if it does not cause any loss of enjoyment in the use of private land." *People v. McDonald,* 137 Cal. App.4th 521, 40 Cal.Rptr.3d 422, 433 (1st Dist. 2006). On the other hand, "in determining whether a particular activity constitutes a public nuisance, a court considers three elements: (1) the proscribed act, (2) *whether the result of the act interferes with the comfortable enjoyment of life or property,* and (3) whether the act affects a sufficient number of persons. We review these elements in turn," *Id.* at 434 (emphasis added). This Court takes no position on whether the public nuisance claim should be dismissed but

## II. LEGAL STANDARD

■ Rule 21 of the Federal Rules of Civil Procedure states: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."[22] A trial court may sever parties or claims in its discretion to promote judicial economy.[23]

■ When deciding a motion to sever, a district court should consider the following factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.[24]

"Severance requires the presence of only one of these conditions."[25] Above all, the court must consider "principles of fundamental fairness and judicial efficiency."[26]

## IV. SEVERANCE OF THE NON–STATE PLAINTIFFS IS WARRANTED

■ Applying the five factors outlined above, severance of the non-State plaintiffs is warranted under Rule 21. With respect to the first two factors, California's claims and the non-state plaintiffs' claims arise out of a

---

merely highlights the issue to demonstrate how California and the non-State plaintiffs' public nuisance claim are fundamentally different.

22. Fed.R.Civ.P. 21.

23. *See generally* Moore's Federal Practice 3d Ed. § 21.02[4] (2007).

24. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 214 F.R.D. 152, 154–55 (S.D.N.Y.2003).

25. *Cestone v. General Cigar Holdings, Inc.,* No. 00 Civ. 3686, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002) (quoting *Lewis v. Triborough Bridge and Tunnel Auth.,* No. 97 Civ. 0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000)).

26. Moore's Federal Practice § 21.02[4].

similar, although not identical, series of occurrences, and the claims present common questions of law or fact. "A good example is the issue of the defendants' knowledge and concealment of the dangers of MTBE," [27] an issue that underlies many of the claims in the Complaint.

However, this is countered by the fact that a common nucleus of operative facts involving MTBE and the contamination of water lies at the heart of *all* of the complaints in this MDL. Thus, the claims brought by the non-State plaintiffs have as much in common with the claims brought by any other plaintiff in this MDL, as they have in common with the claims of California.

"Indeed, this common nucleus of operative fact is why the Judicial Panel on Multidistrict Litigation has repeatedly transferred actions involving MTBE to this Court." [28] "There are now well over one hundred actions assigned to this Court, each having been transferred here for consolidated pretrial proceedings from district courts in nineteen states." [29] Thus, the first two factors to be considered are at most neutral under these circumstances in determining whether the claims should be severed.[30]

With respect to the third factor, severance of the claims will further settlement and promote judicial economy. One reason for consolidating actions before the same court is it ensures consistency in the decisions and facilitates resolution of the disputes because "every experienced litigator understands that there are often a handful of crucial issues on which the litigation primarily turns." [31] For example, the Court has designated focus actions for early discovery and trial and scheduled a bellwether trial for March 3, 2008. Moreover, severing the claims potentially promotes judicial economy as all of the

claims seeking compensatory and punitive damages will remain with this Court, while the state court will decide whether the defendants committed certain regulatory violations that warrant the imposition of civil fines.[32]

Even if the state court decides to move forward in deciding California's claims, this factor is, at best, neutral because there will continue to be parallel actions regardless of whether this Court severs the non-State plaintiffs' claims. Judicial resources will not be preserved by transferring all of the plaintiffs in the State of California complaint to the state court; this Court's judicial resources will be expended regardless of whether the claims are severed. Thus, the third factor weighs in favor of severing the claims of the non-State plaintiffs because it promotes settlement as well as potentially saves judicial resources of the state court.

The fourth factor weighs heavily in favor of severing the claims of the non-State plaintiffs (who did not appeal to the Second Circuit) as severing does not prejudice plaintiffs and avoids prejudicing the defendants. California is represented by Jan Scully, the Sacramento County District Attorney, who is primarily seeking to impose civil fines on the oil companies. The non-State plaintiffs are represented by Sher Leff LLP, which is primarily seeking compensatory and punitive damages for harm done to the property of the non-State plaintiffs. Severing the claims will thus not impose any significant costs on these plaintiffs. Indeed, there are certain efficiencies to be gained by severing as the attorneys who have claims seeking compensatory and punitive damages are able to combine briefing, travel time, and court appearances in this MDL, which lowers the cost of litigation and encourages more effective advocacy.[33]

---

27. *In re MTBE,* 510 F.Supp.2d 299, 324 (S.D.N.Y.2007).

28. *In re MTBE Prods, Liab. Litig.* (*"In re MTBE"*), 510 F.Supp.2d 299, 325–27 (S.D.N.Y. 2007).

29. *Id.* at 300–303.

30. Moreover, California seeks injunctive relief and fines, while the non-State plaintiffs seek monetary damages, a fact that further justifies severing the claims.

31. *In re MTBE,* Nos. 00 Civ. 1898, M21–88, MDL 1358, 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007).

32. Moreover, the state court may decide to stay the action pending the resolution of the focus cases in this MDL.

33. *See In re MTBE,* 341 F.Supp.2d 386, 415 (S.D.N.Y.2004) (declining to sever Chevron Texaco, whose bankruptcy conferred jurisdiction, and remand cases against remaining defendants).

Defendants also correctly argue that failing to sever the non-State plaintiffs prejudices their right to removal and allows an "end-run" around the bankruptcy removal statute. This Court has subject matter jurisdiction over the claims by the non-State plaintiffs pursuant to section 1334 of title 28 of the United States Code "because questions concerning when certain 'claims' arose and whether those claims were discharged involve the enforcement and construction of Texaco's discharge injunction, a substantive right created by the federal Bankruptcy Code."[34] Section 1452 of title 28 of the United States Code permits removal of a case involving a bankruptcy to a federal district court "if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."[35] However, a party may not use section 1452 to remove "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power"[36]

In this case, the Second Circuit held that California's action relates "primarily to matters of public health and welfare, and the money damages sought will not inure, strictly speaking, to the economic benefit" of the state.[37] The proceeding thus represents an effort by California to enforce its "police or regulatory power" and may not be removed under section 1452.[38]

In contrast, the non-State plaintiffs' claims were properly removed because the action brought on their behalf does not any police or regulatory powers. The lack of police or regulatory powers is obvious with respect to the private corporation, California–American

Water Company.[39] It is impossible for any of their claims to represent an enforcement of "police or regulatory" powers as a matter of law. The same is true of the nine water agencies, which are essentially "public corporations." The water agencies have corporate and tax power but lack any police or regulatory power.[40]

The only plaintiff that has police or regulatory power is the City of Sacramento but "[a]s the plain language of section 1452 recognizes, a complaint filed by a governmental unit does not always enforce its 'police or regulatory' powers."[41] The fact that the City of Sacramento is not attempting to enforce any police or regulatory powers is made clear by the fact that their claims and damages sought are *identical* to the claims and damages sought by the private corporation and the water agencies. It would make no sense to hold that a tort claim filed by a private entity seeking compensatory and punitive damages enforces "police or regulatory" powers when filed by a governmental unit that has also suffered alleged property damage.

Indeed, plaintiffs draw a sharp distinction between the claims brought by California and the non-State plaintiffs throughout the Complaint,[42] and they could easily have filed two Complaints in this case: one by California and the another by the non-State plaintiffs. Had they done so, there would be no question that section 1452 allowed the defendants to remove the action by the non-State plaintiffs so long as the Court found that it had bankruptcy jurisdiction. While plaintiffs are the masters of their complaint, the Court has

---

34. *Id.* at 414.

35. 28 U.S.C. § 1452.

36. *Id.*

37. *In re MTBE,* 488 F.3d at 133.

38. *See id.*

39. "Plaintiff CALIFORNIA–AMERICAN WATER COMPANY is a California corporation with its principal place of business in Chula Vista, California, doing business in California. California–American Water Company owns and operates a public drinking water system in the County that supplies drinking water to residents, businesses and other users in the County." Compl. ¶ 31.

40. *See In re MTBE,* 522 F.Supp.2d 569 (S.D.N.Y. 2007).

41. *Id.* at 574–76 (citing various opinions holding that an action by a governmental unit did not enforce police or regulatory powers).

42. *See, e.g.,* Compl. ¶ 33 (alleging that the non-State plaintiffs "file this lawsuit in order to recover compensatory, punitive and all other damages, including all necessary funds to investigate, monitor, prevent, abate, treat and contain any MTBE and/or TBA contamination of, or pollution to the groundwaters of the County and/or their drinking water supplies.").

repeatedly declined to elevate form over substance in this complex litigation.[43] The fact is that plaintiffs combined various plaintiffs' claims into one complaint at a time when they were well aware defendants were removing the cases to federal court. In such a situation, avoiding the prejudice caused to the defendants by this "end run" around the removal statute weighs heavily in favor of severing the claims by the non-State plaintiffs before sending California's action to state court.

Finally, to the extent that the same witnesses and documentary proof will likely apply to the claims of both the State of California and the non-State plaintiffs, this is equally true for the actions that remain in the MDL. For example, evidence relating to the defendants' knowledge and disclosure of MTBE's dangers to groundwater is central to public nuisance claims asserted by all plaintiffs in the MDL. Moreover, the non-State plaintiffs' tort claims require evidence relating to money damages that is not required for California's claims for injunctive relief. At most, this factor is neutral in deciding whether to sever the claims of the non-State plaintiffs.

## IV. CONCLUSION

Severing the claims of the non-State plaintiffs is warranted due to principles of judicial efficiency and fundamental fairness: it facilitates the settlement of the claims by non-State plaintiffs, serves judicial economy, and avoids prejudicing the defendants who properly removed the claims of the non-State plaintiffs. Certain defendants' Motion to Sever Claims of Certain Plaintiffs is therefore granted. The Clerk of the Court is directed to close this motion (document # 1518).

SO ORDERED:

---

**43.** *See, e.g., In re MTBE*, 510 F.Supp.2d 299 at 310 ("Such a course would surely elevate form over substance"); *In re MTBE*, 2007 WL 1791258, at *6 ("Moreover, plaintiffs could have brought 182 separate lawsuits, each alleging

damage to a single well.... In the end, it makes little sense to reach a different result based on plaintiffs' pleading choices at the outset of this complex litigation").